James BROWN, Petitioner–Appellant,

v.

Christopher ARTUZ, Respondent–
Appellee.

No. 1311, Docket 96–2628.

United States Court of Appeals,
Second Circuit.

Argued April 28, 1997.

Decided Aug. 6, 1997.

Philip S. Glickman, Rochester, NY, for pe-
titioner-appellant.

Arthur D. Middlemiss, Asst. Dist. Atty.,
New York City (Robert M. Morganthau,
Dist. Atty., Alan Gadlin, Asst. Dist. Atty.,
New York City, on brief), for respondent-
appellee.

Before: MESKILL and NEWMAN, Circuit Judges, and CEDARBAUM,* District Judge.

JON O. NEWMAN, Circuit Judge:

This appeal presents several issues concerning a criminal defendant's constitutional right to testify at his trial, issues that arise in a case where a defendant does *not* testify. The specific issues are (1) whether the decision to testify is ultimately for the defendant or for trial counsel to make; (2) if the right to testify is "personal" to the defendant in the sense that only the defendant may validly relinquish it, whether an obligation to advise the defendant concerning the right to testify rests with either the trial judge or defense counsel; and (3) if the responsibility rests with defendant's counsel, what standard governs a court's consideration of a defendant's claim that trial counsel either failed to inform him that the decision to testify was ultimately his to make, or overrode his desire to testify.

■■■ These issues arise on an appeal by James Eric Brown from the July 15, 1996, judgment of the District Court for the Southern District of New York (Charles S. Haight, Jr., Judge) denying Brown's petition for habeas corpus under 28 U.S.C. § 2254 to challenge his state court conviction. The petition alleged that defense counsel prevented Brown from testifying and/or failed to inform the defendant that the ultimate decision whether to testify was his to make. We conclude that the decision whether a defendant should testify at trial is for the defendant to make, that trial counsel's duty of effective assistance includes the responsibility to advise the defendant concerning the exercise of this constitutional right, and that the two-part test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), should be used to assess a defendant's claim that defense counsel rendered ineffective assistance by preventing him from testifying or at least failing to advise him concerning his right to testify. Because we also conclude that Brown has failed to satisfy the prejudice prong of the *Strickland* test, we affirm the judgment of the District Court.

## Background

Brown was arrested in February 1990 by local police for the murder of Eddie Lee Barr. After waiving his *Miranda* rights, Brown gave a series of statements to the police concerning Barr's death. Although Brown repeatedly denied any culpability in the offense, he eventually admitted, in his fourth statement to the police, that he had shot Barr to death during an altercation. Brown's videotaped confession given on the morning after his arrest, substantially similar to his fourth statement, contains the following description of the episode.

At the time of the murder, Brown lived with his mother and brother in Apartment 6H of a building located at 20 Paladino Avenue in Manhattan. Barr, the eventual victim, lived in the Bronx but often stayed with his mother, who lived in Apartment 6G, next door to the Browns. The two families had been neighbors for more than twenty-five years, and Brown and Barr had known each other since childhood. Although the families generally got along over the years, several of the Browns, including the petitioner, suspected Barr of breaking into their apartment in January 1990 and stealing some kitchen utensils. Brown also blamed Barr for helping Brown's younger brother become addicted to crack cocaine. Brown admitted, however, that prior to 1990, he had no problems with Barr.

Around 11 p.m. on the evening of February 21, 1990, Brown, who carried a loaded, unlicensed revolver in a shoulder holster, was on his way home after visiting his girlfriend. As he walked along the sixth-floor hallway toward Apartment 6H, he noticed that Barr was leaning into Apartment 6G and speaking in a low voice with someone inside. As Brown walked past, Barr slammed his door and walked toward Brown. After the two men exchanged some initial unpleasantries, including Brown's accusation that Barr had

* Honorable Miriam Goldman Cedarbaum, of the United States District Court for the Southern District of New York, sitting by designation.

broken into, and stolen valuables from, the Browns' apartment, an altercation ensued. At first, Barr simply walked away from Brown toward the staircase, and denied Brown's accusations. Brown pursued the victim and continued to accuse him of the burglary and theft.

While the two men were standing on the sixth-floor landing of the staircase, Barr put his hands on Brown's chest and made a "grabbing motion." Brown responded by seizing Barr by his wrists. Scuffling, the two men eventually made their way down the stairs to the fifth-floor landing, all the while maintaining their grips on one another. As they reached the fifth-floor landing, Brown pushed Barr away from him. While separated from Brown by a few feet, Barr noticed that Brown was carrying a pistol under his jacket. Barr then "went for" the gun and managed to get two or three fingers on the end of its handle. Brown realized, however, that Barr could not remove the gun from its holster, even if he had had a better grip on the weapon, because the holster had to be unsnapped for the gun to be removed. Brown then decided to reach for the gun himself and quickly overcame Barr's hand on the weapon. Brown swiftly unsnapped the holster and pulled the revolver out.

Brown pushed Barr's hand away and Barr moved one step back. Brown then took two steps back, holding the gun pointed at Barr. Barr then made a move toward Brown. Brown aimed at "about chest level" and fired one shot at Barr. Struck by the bullet, Barr moaned, took several steps back, and "hit the wall with his back."

At this point, the two men were approximately three or four steps apart. Brown fired again. After this second shot, Barr was still standing, but beginning to fall to the floor. As Barr fell, letting out a deep moan, Brown fired again. After each shot, Barr "bounced" a bit and moaned. In all, Brown fired five shots at Barr's chest and leg areas, four of which hit the victim.

Brown "panicked," quickly fled the building, and spent the evening at his girlfriend's house. Barr, meanwhile, crawled back to his mother's apartment on the sixth floor. He eventually identified Brown as the shooter to his family, to the emergency medical service team that took him to the hospital, and to a police officer who arrived on the scene soon after the shooting. Barr died shortly after arriving at the hospital. Brown gave himself up to the police the following day.

At Brown's trial for murder and criminal possession of a weapon, the prosecution established that Barr was unarmed during the incident in question, that Brown did not believe that Barr possessed a weapon, and that at least three of the four bullets that struck Barr were fired while the victim was already lying prone on the ground. The jury saw Brown's videotaped confession. The defense case relied on the defense of justification, and consisted solely of the testimony of Brown's mother. She stated that while she generally got along with Barr's family, she suspected Barr of having broken into and stolen items from her apartment shortly prior to his death. Brown did not testify.

The jury convicted Brown of murder in the second degree and criminal possession of a weapon in the second and third degrees. N.Y. Penal Law §§ 125.25(1), 265.03 & 265.02(4) (McKinney 1987, 1989). Brown's direct appeal challenged his conviction and sentence on several grounds, including a claim that the prosecution had not disproved his justification defense beyond a reasonable doubt, as required by New York law.[1] The Appellate Division affirmed the conviction and ruled that "defendant's justification defense was disproved beyond a reasonable doubt by evidence showing that defendant could have retreated with complete safety, and the number of shots fired into the victim. *Nor did defendant testify that he feared for his life.*" *People v. Brown,* 187 A.D.2d 312, 312, 589 N.Y.S.2d 448, 449 (1st Dep't 1992) (emphasis added) (citations omitted). Leave to appeal to the Court of Appeals was denied. *People v. Brown,* 81 N.Y.2d 837, 595 N.Y.S.2d 736, 611 N.E.2d 775 (1993).

---

1. In New York, "justification is a defense, not an affirmative defense, and therefore the People bear the burden of disproving it beyond a reason-able doubt." *See In re Y.K.,* 87 N.Y.2d 430, 433, 639 N.Y.S.2d 1001, 1003, 663 N.E.2d 313 (1996).

In March 1993, Brown moved to vacate the conviction in the state trial court pursuant to N.Y. Crim. Proc. Law § 440.10(1)(h) (McKinney 1994). Seizing upon the Appellate Division's observation that he had not testified that he feared for his life, Brown claimed for the first time that ineffective assistance of trial counsel had prevented him from testifying. He alleged that his attorney had "taken it upon himself to waive [Brown's] fundamental right to testify," despite Brown's repeated "insistence" that he wanted to testify, and had failed to inform him that the ultimate decision whether to testify belonged to him. Brown further alleged that, had he taken the stand, he would have testified that he had a "true, real, and well founded fear" of Barr based upon their numerous prior altercations, Barr's prior threats against Brown, and Brown's previous observations of Barr's "violent temper" and "acts of violence." Such testimony would have contradicted Brown's statements in the videotaped confession that he had not had any prior negative encounters with Barr. The state trial court denied Brown's motion, ruling that (i) Brown's purported dissatisfaction with counsel's performance came "[o]nly through the convenience of hindsight," and that (ii) counsel's decision not to call Brown as a witness was reasonable, because the videotaped confession played to the jury sufficiently set forth the elements of the justification defense and because, had he taken the stand, Brown would have been cross-examined by the prosecution about the three contradictory statements he had made to the police following his arrest. *People v. Brown,* Ind. No. 2950/90 (N.Y.Sup.Ct. Mar. 22, 1993). Leave to appeal to the Appellate Division was denied.

Brown filed his section 2254 petition in February 1995, alleging that his Sixth Amendment right to effective assistance of counsel had been violated because his attorney failed to inform him that he "enjoyed the fundamental right to testify in his own defense and that the decision to testify is personal to [him]." Brown again claimed that trial counsel overrode his desire to testify in his own defense, and contended that he would have testified that his past encounters with the victim created a real and well-founded fear for his life during the encounter that preceded the shooting.

In a report and recommendation, Magistrate Judge Andrew Peck, relying on the two-prong *Strickland* analysis suggested by both Brown and the respondent, concluded that Brown could not satisfy either the performance or the prejudice prong of this test and recommended denial of Brown's petition. Judge Haight adopted the report and recommendation, agreeing with the Magistrate Judge that "Brown's present stated desire to have testified is highly suspect, and that in any event, the result [at trial] would not likely have been different if Brown had testified." *Brown v. Artuz,* No. 95 Civ. 2740, 1996 WL 511558 at *1 (S.D.N.Y. June 10, 1996) (quotations omitted).

## Discussion

In *Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), the Supreme Court ruled that the right to testify at one's criminal trial, although not found in the text of the Constitution, "has sources in several provisions of the Constitution," *id.* at 51, 107 S.Ct. at 2709 including the Due Process Clause of the Fifth and Fourteenth Amendments, *id.,* and the Compulsory Process Clause of the Sixth Amendment, *id.* at 52, 107 S.Ct. at 2709. Moreover, "[t]he opportunity to testify is also a necessary corollary to the Fifth Amendment's guarantee against compelled testimony." *Id.; see United States v. Bifield,* 702 F.2d 342, 349 (2d Cir. 1983).

Recognition of a constitutional right to testify in one's own defense only begins the inquiry in this case. Important questions concerning this right were not answered by *Rock* and have not been resolved by this Circuit: (1) Is the decision whether to testify to be made by the defendant or his trial counsel? (2) If the decision is the defendant's, does either the trial judge or the defendant's attorney have a responsibility to inform the defendant of the existence and nature of this right? (3) If defense counsel has the responsibility to inform the defendant of his right to testify, what standard governs review of a claim that counsel failed to exercise that responsibility or even pre-

vented the defendant from testifying? We discuss each question in turn.

1. The Decision to Testify

■ As the Eleventh Circuit stated in a comprehensive in banc opinion, criminal defendants at trial "possess essentially two categories of constitutional rights: those which are waivable by defense counsel on the defendant's behalf, and those which are considered 'fundamental' and personal to the defendant, waivable only by the defendant." *United States v. Teague,* 953 F.2d 1525, 1531 (11th Cir.1992) (in banc). Included in the former category are matters that "primarily involve trial strategy and tactics," such as "what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." *Id.* Included in the latter category of decisions "personal" to the defendant are, for instance, the decisions whether to enter a guilty plea, *see Boykin v. Alabama,* 395 U.S. 238, 242–44, 89 S.Ct. 1709, 1711–12, 23 L.Ed.2d 274 (1969), whether to waive a jury trial, *see Adams v. United States ex rel. McCann,* 317 U.S. 269, 275, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942), and whether to pursue an appeal, *see Fay v. Noia,* 372 U.S. 391, 438–40, 83 S.Ct. 822, 848–49, 9 L.Ed.2d 837 (1963). The question now before us is whether the defendant's right to testify on his own behalf is one of these "personal" rights. If it is, then the defendant must be allowed to testify if he so desires, regardless of strategic considerations that his lawyer concludes weigh against such a decision. If the right is not personal to the defendant, then trial counsel could prevent the defendant from testifying even when the defendant insists on taking the stand.

Arguments are available to support either position. It might be argued, for instance, that once a defendant waives his right to self-representation and retains counsel to represent him during trial, he thereby forfeits his right to determine all tactical aspects of the conduct of trial, including whether certain objections will be made, how a cross-examination of a prosecution witness will be conducted, and which witnesses, including the defendant himself, will testify for the defense. Because the decision whether the defendant will testify requires weighing the potential benefits against numerous dangers, it might well be left to defense counsel, like other strategic decisions. Defense counsel has superior experience with the criminal process and detailed, objective knowledge of the strengths and weaknesses in the defendant's case. At least one concurring opinion, predating *Rock,* has accepted this argument, noting that the ultimate decision must reside with trial counsel because "[n]o one could seriously contend that a defendant is in a better position to dictate trial strategy than his attorney," and because "[n]o attorney could discharge [h]is duty [to provide his client with the best possible defense within the law] if he must yield to the personal demands of his client." *Wright v. Estelle,* 572 F.2d 1071, 1073 (5th Cir.1978) (in banc) (Thornberry, Clark, Roney, Gee, and Hill, JJ., specially concurring). *Cf. Campos v. United States,* 930 F.Supp. 787, 790 (E.D.N.Y.1996) ("[L]ogic suggests that the decision of whether or not a defendant should testify should rest ... [with trial counsel,] who is in a superior position to assess the strength of the case, the plausibility of the defendant's account, and the ability of the defendant to withstand cross-examination.").

However, every circuit that has considered this question has placed the defendant's right to testify in the "personal rights" category— *i.e.,* waivable only by the defendant himself regardless of tactical considerations. *See, e.g., United States v. Pennycooke,* 65 F.3d 9, 10–11 (3d Cir.1995); *United States v. McMeans,* 927 F.2d 162, 163 (4th Cir.1991); *Jordan v. Hargett,* 34 F.3d 310, 312 (5th Cir.1994), *vacated without consideration of this point,* 53 F.3d 94 (5th Cir.1995) (in banc); *Rogers–Bey v. Lane,* 896 F.2d 279, 283 (7th Cir.1990); *United States v. Bernloehr,* 833 F.2d 749, 751 (8th Cir.1987); *United States v. Joelson,* 7 F.3d 174, 177 (9th Cir.1993); *Teague,* 953 F.2d at 1532 (11th Cir.); *United States v. Ortiz,* 82 F.3d 1066, 1070 (D.C.Cir.1996); *see also Lema v. United States,* 987 F.2d 48, 52 (1st Cir.1993) (assuming without deciding that right to testify may not be waived by counsel). Although we acknowledge the force of the arguments to the contrary, we

consider the arguments set forth in these decisions more compelling and rule that the decision whether to testify belongs to the defendant and may not be made for him by defense counsel.

First, although *Rock* itself did not settle this issue, that decision compared the defendant's right to testify with the right of self-representation set forth in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and described the accused's right to testify as "[e]ven more fundamental to a personal defense than the right of self-representation." *Rock,* 483 U.S. at 52, 107 S.Ct. at 2709. Since the decision regarding whether to retain counsel or proceed without representation is personal to the defendant, *see Faretta,* 422 U.S. at 819–20, 95 S.Ct. at 2532–33, *Rock* strongly implies that the decision whether to testify also belongs to the defendant. Second, as *Rock* pointed out, the right to testify is a "necessary corollary to the Fifth Amendment's guarantee against compelled testimony." *Rock,* 483 U.S. at 52, 107 S.Ct. at 2709. Therefore, the "same logic which dictates that a criminal defendant may not be compelled to testify by defense counsel, also supports the conclusion that a defendant may not be compelled to remain silent by his or her attorney." *Campos,* 930 F.Supp. at 791. Third, dictum in one pre-*Rock* decision by the Supreme Court placed the defendant's right to testify in the category of personal rights. *See Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983) ("It is also recognized that the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal."). *See also Wainwright v. Sykes,* 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 2510 n. 1, 53 L.Ed.2d 594 (1977) (Burger, C.J., concurring) ("Only such basic decisions as whether to plead guilty, waive a jury, or testify in one's own behalf are ultimately for the accused to make."). Finally, we note that both the American Bar Association's Standards for Criminal Justice and its Model Rules of Professional Conduct place the defendant's right to testify in the personal category. *See* 1 Standards for Criminal Justice, Standard 4–5.2(a)(iii) (2d ed.1980); Model Rules of Professional Conduct, Rule 1.2(a) (1983). Although counsel has the right, and indeed the professional duty, to advise his client of the benefits and pitfalls of a decision to take the stand on his own behalf, *see* 1 Standards for Criminal Justice, Standard 4–5.2(a), the ultimate decision regarding whether to testify belongs to the defendant.

## 2. Protecting the Defendant's Right to Testify

Having determined that the right to testify is personal to the defendant, we next consider what actions must be taken to protect this right at trial. Specifically, the question arises as to who should bear the responsibility for ensuring that the defendant is informed of the nature and existence of this right and that any decision to waive this right by the defendant is knowingly and intentionally made. The caselaw has assigned this responsibility to either the trial judge or the defense counsel, or left it with the defendant himself.

First, some state courts have ruled that because of the fundamental and personal nature of the right to testify, the trial judge should conduct an on-the-record colloquy with the defendant to inform him of the nature and existence of this right and to ensure that any waiver of the right is knowing and intentional. *See, e.g., People v. Curtis,* 681 P.2d 504, 514 (Colo.1984); *Culberson v. State,* 412 So.2d 1184, 1186–87 (Miss.1982); *State v. Neuman,* 179 W.Va. 580, 371 S.E.2d 77, 81–82 (1988). These courts require record evidence of a defendant's decision to waive the right to testify, like other fundamental rights, such as the right to counsel and the right to a jury trial, *see Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Adams,* 317 U.S. at 275, 63 S.Ct. at 240.

Second, other courts reject a requirement that the trial court inform the defendant of his right to testify and obtain an on-the-record waiver, and instead hold the defense attorney responsible for rendering advice concerning the defendant's personal right to testify. *See, e.g., Teague,* 953 F.2d at 1533 & n. 8; *Ortega v. O'Leary,* 843 F.2d 258, 261

(7th Cir.1988); *Siciliano v. Vose,* 834 F.2d 29, 30 (1st Cir.1987); *United States v. Janoe,* 720 F.2d 1156, 1161 (10th Cir.1983).

Third, some courts appear to place the burden of protecting the right to testify on the defendant himself. Thus, in *United States v. Martinez,* 883 F.2d 750, 759–60 (9th Cir.1989), *vacated on other grounds,* 928 F.2d 1470 (9th Cir.1991), the Court analogized the right to testify to the right to confront witnesses, which, the Court stated, is so well known that counsel is not obliged to inform the defendant of its existence.

■ We agree with those courts that place no general obligation on the trial court to inform a defendant of the right to testify and ascertain whether the defendant wishes to waive that right.[2] Just as the trial judge need not stop a defendant called by defense counsel to the stand and explain the right not to testify, the judge need not intervene when counsel announces that the defendant rests and the defendant has not testified. At the same time, we do not go so far as *Martinez* in relieving defense counsel of a responsibility in the matter. We agree with *Teague* that "[d]efense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify. . . ." 953 F.2d at 1533. Although counsel should always advise the defendant about the benefits and hazards of testifying and of not testifying, and may strongly advise the course that counsel thinks best, counsel must inform the defendant that the ultimate decision whether to take the stand belongs to the defendant, and counsel must abide by the defendant's decision on this matter.

### 3. Reviewing the Adequacy of Counsel's Assistance

Because the burden of ensuring that the defendant is informed of the nature and existence of the right to testify rests upon defense counsel, we conclude that this burden is a component of the effective assistance of counsel. As a result, any claim by the defendant that defense counsel has not discharged this responsibility—either by failing to inform the defendant of the right to testify or by overriding the defendant's desire to testify—must satisfy the two-prong test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for assessing whether counsel has rendered constitutionally ineffective assistance. *See Teague,* 953 F.2d at 1534. Under *Strickland,* a defendant must establish both that counsel's performance was so defective that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," 466 U.S. at 687, 104 S.Ct. at 2064, and that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," *id.* To satisfy the first, or "performance," prong, the defendant must show that counsel's performance was "outside the wide range of professionally competent assistance," *id.* at 690, 104 S.Ct. at 2066 and to satisfy the second, or "prejudice," prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the

2. Several circuits have ruled that although a trial judge generally is not required "to advise the defendant of the right to testify or to obtain an on-the-record waiver of such right," *Pennycooke,* 65 F.3d at 13, "judicial interjection through a direct colloquy with the defendant may be required" in "exceptional, narrowly defined circumstances," *id.* at 12. For instance, where the trial judge has reason to believe that defense counsel is frustrating the defendant's desire to testify, *id.* at 13, where the defendant has expressed his desire to testify to the court, *see Ortega v. O'Leary,* 843 F.2d at 261 (7th Cir.1988), or where "there appears to be no rational explanation for the decision" not to testify, *Ortiz,* 82 F.3d at 1071, some courts have concluded that the trial judge should inquire directly of the defendant concerning his right to testify.

We do not settle this issue here because Brown's trial did not present any exceptional circumstances warranting a departure from the general rule that a trial judge has no duty to inform the defendant of his right to testify. Moreover, we note that although a trial judge *is permitted* to conduct such an inquiry even when exceptional circumstances are not present, such colloquy will generally be inadvisable, as judicial interference with counsel's strategic decision not to place his client on the stand "poses a danger that the judge will appear to encourage the defendant to invoke or waive this right" even when it is unwise to do so. *See, e.g., United States v. Joelson,* 7 F.3d at 178.

result of the proceeding would have been different," *id.* at 694, 104 S.Ct. at 2067.

### 4. Application of *Strickland* to Brown's Claim

■ In the present case, Brown alleged in his habeas petition that "[d]efense counsel never advised petitioner that petitioner enjoyed a fundamental right to testify in his own defense and that the decision to testify is personal to petitioner, and prevented petitioner from exercising his right to testify in his own defense." As the in banc Eleventh Circuit stated in *Teague:*

> [I]f defense counsel refused to accept the defendant's decision to testify and would not call him to the stand, counsel would have acted unethically to prevent the defendant from exercising his fundamental constitutional right to testify. Alternatively, if defense counsel never informed the defendant of the right to testify, and that the ultimate decision belongs to the defendant, counsel would have neglected the vital professional responsibility of ensuring that the defendant's right to testify is protected and that any waiver of that right is knowing and voluntary.

953 F.2d at 1534.

The Magistrate Judge concluded, and the District Judge agreed in adopting the Magistrate Judge's report and recommendation, that "Brown's present stated desire to have testified is highly suspect" and that "there can be no doubt from the trial record that Brown was aware of the right to testify and that defense counsel was not going to call Brown to testify." However, neither the Magistrate Judge nor the District Judge explicitly found that Brown was aware that the ultimate decision whether to testify belonged to him, *see Campos,* 930 F.Supp. at 793 ("[T]he issue here is not whether petitioner knew he had the right to testify, but whether he knew that ultimately it was his choice to make, not that of his attorney."). We need not remand for a finding on this point because, even if Brown's conclusory allegation

raised an issue on the performance prong of *Strickland, but see Underwood v. Clark,* 939 F.2d 473, 476 (7th Cir.1991) (conclusory allegation that lawyer prohibited defendant from testifying inadequate to require hearing), Brown cannot satisfy the prejudice prong of the *Strickland* test. *See Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.").

As discussed earlier, Brown acknowledges that the only reason he wanted to testify was to demonstrate that the prosecution failed to disprove his defense of justification beyond a reasonable doubt.[3] Specifically, Brown contends that his testimony would have shown that, based on his past experiences with, and observations of, Barr, the victim, he had a "true, real, and well founded fear" of Barr during the encounter on the evening of February 21, 1990. In a proffer accompanying his state court motion to vacate the conviction on the same ground presented in his section 2254 petition, Brown stated that, had he been allowed to take the stand, he would have testified

(1) That the defendant had a true, real and well founded fear of the decedent as a result of a number of previous unrelated altercations between them.

(2) That the decedent had threatened defendant's life on more th[a]n one occasion in the past as a result of defendant's refusal to lend him money.

(3) Th[at] decedent had once threatened to kill defendant consequent to an accusation that defendant had been having or had had a sexual relationship with decedent's girlfriend. The decedent had gone as far as to display a hand gun and advised defendant that should the rumors continue, that he would shoot defendant.

(4) That defendant also feared the decedent as a result of knowing, first hand, that the decedent had a very violent temper, in addition to personally witnessing

---

**3.** Because, under New York law, the defense of justification cannot be used to defend against a prosecution for criminal possession of a weapon, *see, e.g., People v. Pons,* 68 N.Y.2d 264, 267, 508 N.Y.S.2d 403, 501 N.E.2d 11, 13 (1986), Brown's purported testimony would not have affected his conviction on the two weapons-related charges.

the decedent perpetrate acts of violence on others in their neighborhood.

Even if Brown had made such statements on the stand, however, there is no reasonable probability that the verdict would have been different. Under New York law, a defendant can use deadly force to defend himself only if, among other things, (1) he subjectively believes that the use of deadly force is necessary, (2) a reasonable person in defendant's position would believe that the use of deadly force is necessary, and (3) the defendant does not "know[ ] that he can with complete safety as to himself and others avoid the necessity of [using deadly force] by retreating." N.Y. Penal Law § 35.15(1)-(2) (McKinney 1987); *see generally People v. Goetz,* 68 N.Y.2d 96, 506 N.Y.S.2d 18, 497 N.E.2d 41 (1986). Although Brown's purported testimony would have supported the first element, and perhaps the second as well, nothing in his offer of proof would have been sufficient to support a reasonable inference in his favor on the third element of the justification defense.

■ "If a defendant confronted with deadly force knows retreat can be made with complete safety and fails to do so, the defense [of justification] is lost." *In re Y.K.,* 87 N.Y.2d 430, 434, 639 N.Y.S.2d 1001, 663 N.E.2d 313, 315 (1996).[4] The evidence before the jury established beyond a reasonable doubt that Brown did not have the right to use deadly force, regardless of any prior provocation. Brown was the only person with a gun. The victim was unarmed. Moreover, nothing in the record suggests that Brown somehow believed, mistakenly, that Barr possessed a weapon at any time during their struggle. Brown's confession established that he fired five shots at an unarmed person. Forensic evidence demonstrated that at least three of these shots were fired while Barr was already in a prone position. Even if Brown did not know that he could have retreated with complete safety

before the first shot, nothing could justify Brown's continued shooting of the victim after that initial shot. *Cf. People v. Arlequin,* 625 N.Y.S.2d 613, 614, 214 A.D.2d 747, 748 (2d Dep't 1995) (concluding that where "defendant shot the victim after obtaining sole control of the gun, when the defendant no longer had a reasonable belief that he was in mortal danger and could have retreated in safety," prosecution had disproved defense of justification beyond reasonable doubt); *People v. Alvarez,* 607 N.Y.S.2d 137, 138, 201 A.D.2d 487, 487–88 (2d Dep't 1994).

The entirety of Brown's proffered testimony would have concerned his past encounters with Barr and how such experiences caused him to fear for his life during their fight on the evening of the shooting. Brown's testimony could not have supported a reasonable inference in his favor on the retreat element of the justification defense, and the evidence before the jury overwhelmingly established that Brown could have safely retreated without using deadly force. Since the only testimony Brown claims he wanted to present would not have aided his justification defense, Brown was not prejudiced by the purported failure of his trial counsel to inform him of his personal right to testify.

### Conclusion

Because there is no reasonable probability that the result of the trial would have been different, even if Brown had testified, as he claims he wished to do, the judgment of the District Court is affirmed.

■

---

4. A defendant is not required to retreat if he is not the initial aggressor and is attacked within his "dwelling." N.Y. Penal Law § 35.15(2)(a)(i) (McKinney 1987). This exception does not apply here because, even if we assume that Barr was the initial aggressor, Brown shot Barr on the landing of the fifth floor, while Brown's dwelling was an apartment on the sixth floor. *See People*

*v. Childs,* 250 N.Y.S.2d 926, 927–28, 21 A.D.2d 809, 810 (2d Dep't 1964) (back porch at end of a common hallway shared by several apartments, including defendant's, was not defendant's "dwelling" within meaning of justification defense); *see also People v. Gaines,* 229 A.D.2d 448, 645 N.Y.S.2d 510, 510 (2d Dep't 1996) (front yard not considered to be "dwelling").