OPINION
{¶ 1} Appellant, Mr. Andrew J. Janick, III, appeals from the July 18, 2007 judgment entry of the Ashtabula County Court, Western District, which sentenced him after being found guilty by jury for an OVI and speeding. For the following reasons, we affirm.
 {¶ 2} Substantive and Procedural History *Page 2 
 {¶ 3} At approximately 8:00 p.m. on April 21, 2006, Trooper Daniel Jess ("Trooper Jess") of the Ohio State Highway Patrol, Ashtabula post, observed appellant ("Mr. Janick") speeding eastbound at forty-five m.p.h. in a thirty-five m.p.h. zone. After confirming that Mr. Janick was speeding in excess of the posted limit with his additional "back radar unit," Trooper Jess activated his lights, and pulled behind Mr. Janick, indicating to him to pull over.
 {¶ 4} Upon his initial approach, he immediately noticed Mr. Janick's bloodshot eyes and the smell of alcohol emanating from his person. Trooper Jess requested proof of identification and insurance, noticing that Mr. Janick's speech was slow and slurred. When Trooper Jess asked him where he was coming from, Mr. Janick hesitantly replied, after several moments, that he was coming from the Last Call, a bar in Geneva. Mr. Janick fumbled for his driver's license, eventually producing it with, as Trooper Jess testified, "thick-thumbs." Mr. Janick was unable to locate either his proof of insurance or the correct vehicle registration. Instead of producing registration for the 2004 Dodge vehicle he was driving, he gave Trooper Jess registration for a 2001 Dodge vehicle.
 {¶ 5} Trooper Jess testified that at this point, he was alerted to the fact that Mr. Janick was displaying possible signs of impairment while operating his motor vehicle so he decided to test Mr. Janick's divided attention skills to investigate the matter further. First, Trooper Jess asked Mr. Janick to tell him what the time was without looking at the clock. Even though he was advised not to, Mr. Janick turned and looked at the clock, before turning back and responding that it was "around eight-ish." Trooper Jess then asked and Mr. Janick correctly replied the year of his birth. *Page 3 
 {¶ 6} When asked of any prior convictions, Mr. Janick admitted to having a prior OVI conviction "years ago." Trooper Jess then asked him to step out of the vehicle to continue his investigation. On leaving the vehicle, Mr. Janick was unsteady on his feet. He tried several times to put his wallet, which he was still holding in his hand, in his right rear pocket. He voluntarily submitted to a pat-down, and as Trooper Jess patted him down, he again smelled the odor of alcohol. He asked Mr. Janick how much he had been drinking. Mr. Janick responded voluntarily that he had consumed about three shots and six beers, and that his last drink was "about a half hour ago."
 {¶ 7} At that point, Trooper Jess proceeded to administer field sobriety tests. After establishing that Mr. Janick had no injuries and was not on any medication that would hinder his performance, Trooper Jess administered the Horizontal Gaze Nystagmus Test (HGNT), the walk and turn test, and the one-leg stand test. One needs only four out of six possible clues of impairment to fail the HGN test. In the case of Mr. Janick, Trooper Jess observed all six. He next administered the walk and turn, and observed two out of a possible eight clues. Only two cues of impairment are needed to fail the walk and turn test. Finally, Mr. Janick was administered the one-leg stand test. He subsequently failed when he displayed two clues of impairment, out of a possible four.
 {¶ 8} Trooper Jess then began to instruct Mr. Janick on the final field sobriety test, the portable breath test ("PBT"). He explained that its evidentiary value is no greater than the other field sobriety tests. As he was instructing Mr. Janick on how to perform the test, Mr. Janick interrupted and asked if he could decline to take the test. *Page 4 
Trooper Jess responded that he could, and Mr. Janick subsequently refused to take the PBT.
 {¶ 9} Mr. Janick was then placed under arrest. He grew argumentative for several moments, then stumbled around and told Trooper Jess about his occupation. Dispatch reported that this would be Mr. Janick's third OVI offense within the last six years, and that it was his fifth OVI in the past twenty. Trooper Jess then informed him that upon reaching the patrol post he would be asked to submit to a breathalyzer test. He explained that Mr. Janick would be given a form, the BMV2255, which explained his rights and the consequences of refusal; and that it was Mr. Janick's choice whether to take the test.
 {¶ 10} Subsequently, after the car was inventoried and Mr. Janick "mirandized," he was taken to the patrol post, where he was given the BMV2255 form. An explanation was given as to the consequence of refusal due to his past OVI convictions. He refused to take the breathalyzer test.
 {¶ 11} Mr. Janick was charged with operating a motor vehicle while impaired, in violation of R.C. 4511.19(A)(1)(a), and refusing to submit to a breathalyzer with an OVI conviction in the past twenty years upon the request of an officer in violation of R.C. 4511.19(A)(2); as well as speeding, in violation of R.C. 4511.21(C).
 {¶ 12} At the status hearing held on February 12, 2007, the trial court granted one of Mr. Janick's motions in limine to prevent evidence from being introduced during the guilt phase of trial of his prior OVI convictions as they related to the first charge, that of operating a motor vehicle while impaired, in violation of R.C. 4511.19(A)(1)(a). The trial court denied Mr. Janick's second motion in limine as it related to presenting *Page 5 
evidence of his prior OVI convictions in the past twenty years as evidence of such was clearly an element the state must prove beyond a reasonable doubt in order to find Mr. Janick guilty of the second charge, R.C. 4511.19(A)(2). In addition, the trial court ruled that the testimony of Mr. Janick's field sobriety testing expert, Mr. Harold J. Copen ("Mr. Copen"), would be limited to the standards of the field sobriety tests and whether in this case, the field sobriety tests were administered in conformity of those standards. Ultimately, before trial, Mr. Janick and the state stipulated that Mr. Janick had a prior OVI conviction in the past twenty years and the court disallowed any other evidence of a prior conviction or convictions. Before dismissing the jury for deliberation, the court gave a cautionary instruction after informing them that the parties stipulated to a prior OVI conviction within the past twenty years. The court cautioned that this evidence was received because it is an essential element of R.C. 4511.19(A)(2) and to not consider it in any way as it related to count one.
 {¶ 13} During a one day jury trial on June 13, 2007, the state presented the testimony of Trooper Jess and throughout his testimony played portions of the field sobriety tests for the jury. Specifically, the state showed the jury the HGN, walk and turn, and one-leg stand portions of the traffic stop. Mr. Janick then presented the testimony of his field sobriety testing expert, Mr. Copen, who is a field sobriety testing instructor. The defense also played portions of the traffic stop for the jury throughout Mr. Copen's testimony. At the close of Mr. Janick's case, he introduced the complete videotape of the traffic stop into evidence. No portions of the videotape were redacted.
 {¶ 14} The jury found Mr. Janick guilty of all counts. A sentencing hearing was held on July 18, 2007. The court compared count one, driving impaired, a violation of *Page 6 
R.C. 4511.19(1)(A)(a), with count two, driving impaired with refusal to consent to a breathalyzer test, a violation of R.C. 4511.19(A)(2), and dismissed count one, finding it to be an allied offense. Mr. Janick was found guilty of a second OVI within the past twenty years and refusing to submit to a breathalyzer test, in violation of R.C. 4511.19(A)(2), and speeding, in violation of R.C. 4511.21(C).
 {¶ 15} Accordingly, the court sentenced Mr. Janick to pay a fine of $550, in addition to court costs. After finding that this was Mr. Janick's fifth OVI conviction in the past ten years, the court ordered Mr. Janick to serve a sixty-day jail sentence, plus an additional one hundred and fifty days of house arrest with alcoholic monitoring. After completing his sentence of house arrest, Mr. Janick was ordered to two years of probation, subject to random testing, in which he was prohibited from possessing or consuming any alcoholic beverages. The court then denied Mr. Janick's request to forgo the ignition interlock system that was placed on his car to ensure that he was not driving while intoxicated under the limited driving privileges, which were granted before trial in order for Mr. Janick to seek employment.
 {¶ 16} Mr. Janick now timely appeals, asserting four assignments of error:
 {¶ 17} "[1.] The trial court committed plain error when it permitted the state to introduce evidence that the defendant-appellant refused to submit to a portable breath test.
 {¶ 18} "[2.] The trial court erred in allowing prejudicial other acts evidence to be introduced to the jury in violation of defendant-appellant's fifth, sixth, eighth and fourteenth amendment rights. *Page 7 
 {¶ 19} "[3.] Trial counsel's deficient performance during the trial deprived the defendant-appellant of the effective assistance of counsel in violation of his sixth and fourteenth amendment rights.
 {¶ 20} "[4.] The trial court's failure to determine whether the defendant-appellant made a knowing and intelligent decision to waive his right to testify on his own behalf violated his sixth andfourteenth amendment rights."
 {¶ 21} Refusal to Submit to a Portable Breath Test
 {¶ 22} In his first assignment of error, Mr. Janick asserts that the trial court committed plain error by allowing the state to introduce evidence of his refusal to submit to a PBT. Mr. Janick contends that the trial court's error was further compounded by the fact that a curative instruction was never given regarding the refusal to take the PBT. Thus, he contends that this erroneous admission clearly contributed to his conviction, resulting in plain error. We find these assertions to be without merit.
 {¶ 23} Generally, "[t]he determination to admit or exclude evidence is within the sound discretion of the trial court and will not be reversed by an appellate court absent a showing of an abuse of discretion."State v. Vinson, 11th Dist. No. 2006-L-238, 2007-Ohio-5199, ¶ 48, citingState v. Sledge, 11th Dist. No. 2001-T-0123, 2003-Ohio-4100, ¶ 20, citing State v. Rootes (Mar. 23, 2001), 11th Dist. No. 2000-P-0003, 2001 App. LEIS 1391, 4-5, citing Renfro v. Black (1990), 52 Ohio St.3d 27,32. "Abuse of discretion connotes more than error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Id., citing State v. Montgomery (1991),61 Ohio St.3d 410, 413, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157. *Page 8 
 {¶ 24} However, Mr. Janick failed to object to the admission of his refusal to submit to a PBT. Thus, he has waived all but plain error for purposes of this appeal.
 {¶ 25} "In the context of a criminal case, a court should invoke the plain error doctrine with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." State v.Cobb, 11th Dist. No. 2007-P-0004, 2007-Ohio-5614, ¶ 22, citing State v.Jenks (1991), 61 Ohio St.3d 259, 282; State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus; State v. Holley (Dec. 17, 1999), 11th Dist. No. 98-A-0089, 1999 Ohio App. LEXIS 6101, 26. "Thus, plain error does not exist unless, but for the error, the outcome of the proceeding would have been different." Id., citing Jenks at 282;Long at paragraph two of the syllabus; Holley at 26-27.
 {¶ 26} Specifically Mr. Janick asserts that because a PBT is not recognized as a reliable field test, the state should not have been permitted to provide evidence of his refusal to submit to the test.
 {¶ 27} "Generally, evidence regarding a refusal to submit to a reasonably reliable chemical test for intoxication is admissible in evidence at trial." State v. Dumwald, 163 Ohio App.3d 361,2005-Ohio-4867, ¶ 39, see Maumee v. Anistik (1994), 69 Ohio St.3d 339;State v. McCoy, 5th Dist. No. 2001 CA00125, 2002-Ohio-1855, citingState v. Murphy (Dec. 29, 1995), 12th Dist. No. CA95-05-010, 1995 Ohio App. LEXIS 5871. "Nonetheless, even when admissible, where a refusal is conditional, unequivocal, or a combination, the trial court should give an appropriate jury instruction as to the relevance of and weight to be given such information." Id., citing Anistik at 344. "The jury instruction provides the proper neutrality, and allows the jury to weigh all the facts and circumstances surrounding any decision not to submit to testing." Id. *Page 9 
 {¶ 28} "The results of a PTB, however, are generally not admissible as evidence." Id. at ¶ 40, see State v. Delarosa, 11th Dist. No. 2003-P-0129, 2005-Ohio-3399, ¶ 55; Cleveland v. Sanders, 8th Dist. No. 83073, 2004-Ohio 4473 (portable tests inadmissible); State v.Ferguson, 3d Dist. No. 4-01-34, 2002-Ohio-1763 (results of the PBT are inadmissible because the Ohio Department of Health no longer recognizes the test.) "Ohio Administrative Code Section 3701-53-02 lists four approved evidential breath testing instruments for use `in determining whether a person's breath contains a concentration of alcohol prohibited or defined by sections 4511.19 * * *.' None of these are defined or designated, however, as a `portable' or `preliminary' breath test. Therefore, we must presume, unless evidence or testimony to the contrary is presented, that the refusal of a PBT is considered inadmissible due to its unreliability." Id.
 {¶ 29} In this case, Trooper Jess testified that he asked Mr. Janick to submit to a PBT, and that after his refusal he put Mr. Janick under arrest. He proceeded to sequence the incident, explaining that Mr. Janick was then put in the patrol vehicle and taken to the station where he was given the BMV2255 form. After Trooper Jess read Mr. Janick the form, which advised him of the consequences of refusing, he asked Mr. Janick to submit to a breath test. Mr. Janick refused and signed his refusal on the BMV2255.
 {¶ 30} There is no question that evidence of Mr. Janick's refusal to take a PBT was erroneously admitted into evidence, although we note that it was in addition to the pertinent evidence of Mr. Janick's unrelated, relevant, and admissible refusal to take the breathalyzer test at the station. This refusal is uncontroverted and in direct violation of R.C. 4511.19(A)(2), for declining to submit to a breathalyzer test when the driver has *Page 10 
had a prior OVI conviction within the past twenty years. The trial court further erred by giving no curative or limiting jury instruction with regard to the PBT.
 {¶ 31} Although we find this to be error, we cannot say that in this case the error rises to plain error. Trooper Jess's testimony and the videotape of the traffic stop evidences that Mr. Janick was clearly driving while intoxicated, and that he refused to submit to a chemical test. The state introduced evidence of Mr. Janick's refusal to submit to a BAC test at the station through Trooper Jess's testimony and the signed BMV2255 form of refusal. Evidence of this refusal is necessary for a conviction under R.C. 4511.19(A)(2). The evidence is uncontroverted that Mr. Janick refused to submit to a BAC test upon the request of an officer and the stipulation was given to the jury that Mr. Janick has had an OVI conviction within the past twenty years. Thus, the admission of the PBT field sobriety test was harmless since it was irrelevant to the finding that Mr. Janick was driving while intoxicated and refused to submit to a breathalyzer test with a prior OVI conviction, all of which was established in this case.
 {¶ 32} The Supreme Court of Ohio recently clarified the essentially "but-for" test used in plain error analysis in State v. Wamsley,2008-Ohio-1195, stating: "* * * the full plain-error analysis, * * * [includes] an inquiry into whether the defendant proved that the error affected substantial rights." Id. at ¶ 27. See United States v.Olano (1993), 507 U.S. 725, 732. "Further, we note that even if the defendant satisfies this burden, the appellate court has discretion to disregard the error and should correct it `only to prevent a manifest miscarriage of justice.'" Id., citing State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus. *Page 11 
 {¶ 33} As the Tenth Appellate District Court recently held in a similar case, Columbus v. Dials, 10th Dist. No. 04AP-1099,2006-Ohio-227, ¶ 21: "[s]ince the jury heard evidence regarding both refusals, it is not likely they assigned more weight to the refusal of the portable breath test than they did to the reliable, admissible testimony regarding the refusal of appellant to submit to a urine test at the jail. There was sufficient evidence presented to the jury, including [the Officer's] observation of appellant's driving, appellant's behavior, odor of alcohol on appellant, and the refusal of appellant to submit to the urine test at the jail, to support the conviction for operating a vehicle under the influence of alcohol and/or drugs. Thus, we determine that under these facts, the error did not affect the outcome of the case and thus was no prejudicial effect. We therefore find the error to be harmless."
 {¶ 34} Mr. Janick's first assignment of error is without merit.
 {¶ 35} Prejudicial Other Acts Evidence
 {¶ 36} Mr. Janick's second and third assignments of error address whether the videotape of the traffic stop, which was offered into evidence by Mr. Janick, was in error since the videotape was unredacted and contained evidence of Mr. Janick's five previous OVI convictions. In his second assignment of error, Mr. Janick argues that the trial court abused its discretion by admitting the tape into evidence. In his third assignment of error, Mr. Janick argues that he was deprived of the effective assistance of counsel since his counsel failed to ensure that the videotape had actually been redacted before it went to the jury.
 {¶ 37} We review Mr. Janick's second assignment of error under an abuse of discretion standard. "The determination to admit or exclude evidence is within the *Page 12 
sound discretion of the trial court and will not be reversed by an appellate court absent a showing of an abuse of discretion."Vinson at ¶ 48, citing Sledge at ¶ 20, citing Renfro at 32. "Abuse of discretion connotes more than error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Id., citing Montgomery at 413, quoting Adams at 157.
 {¶ 38} Mr. Janick first contends that the trial court abused its discretion in allowing defense counsel to enter the videotape into evidence without ensuring that the portions concerning his prior convictions were redacted. We fail to see how the error of Mr. Janick should be so attributed to the court. Mr. Janick argues that the state should have offered the videotape into evidence. He further argues that the state indicated that the videotape had been redacted and that only portions regarding the field sobriety tests would be shown to the jury. Indeed, that is exactly what the state did in this case. The state presented, through the testimony of Trooper Jess, clips of the field sobriety tests from the traffic stop. The state followed the stipulation and did not introduce any other evidence of Mr. Janick's previous OVI convictions. Nor can we say that it was the trial court's error to admit the video into evidence since it was offered by Mr. Janick.
 {¶ 39} "Under the invited error doctrine, `[a] party will not be permitted to take advantage of an error which he himself invited or induced.'" State v. Bey (1999), 85 Ohio St.3d 487, 493, citing Hal ArtzLincoln-Mercury, Inc. v. Ford Motor Co. (1986), 28 Ohio St.3d 20, paragraph one of the syllabus; State v. Seiber (1990), 56 Ohio St.3d 4,17.
 {¶ 40} As Mr. Janick's second assignment of error is without merit, we will now address his third assignment of error and analyze whether the introduction of this *Page 13 
videotape by Mr. Janick's counsel deprived him of the effective assistance of counsel, in violation of his sixth andfourteenth amendment rights.
 {¶ 41} Ineffective Assistance of Counsel
 {¶ 42} "`[W]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. * * * The [Supreme Court of Ohio] recognized that there are `(* * *) countless ways to provide effective assistance in any given case.'"Vinson at ¶ 29, citing State v. Allen (Sept. 22, 2000), 11th Dist. No. 99-A-0050, 2000 Ohio App. LEXIS 4356, 10, citing State v. Bradley
(1989), 42 Ohio St.3d 136, 142, quoting Strickland v. Washington (1984),466 U.S. 668, 687-689. Thus, the Supreme Court of Ohio went on to state in Bradley, that "`judicial scrutiny of counsel's performance must be highly deferential. (* ** ).'" Id.
 {¶ 43} "[B]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. (* * *).' Id at ¶ 30. "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.'" Id. (Citations omitted.)
 {¶ 44} "Thus, `[t]o warrant reversal, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at ¶ 30. (Citations omitted.) *Page 14 
 {¶ 45} There is no question that Mr. Janick's trial counsel erred by entering a videotape into evidence without viewing the actual tape. The question then remains whether this error resulted in actual prejudice.
 {¶ 46} Before dismissing for deliberations, the court gathered the evidence that was to be given to the jury and noticed that there was no video machine in the deliberations room. The court, on the record, stated: "Okay. There we go. We've got the videotape here. And I guess if you want to see the videotape, we'll have the bailiff get the machine in there." The bailiff informed the judge that a plug could not be found. The court then instructed that should the jury want to view the videotape, either a plug would be found, or the jury would be able to return to the courtroom to view the tape. Whether the jury actually viewed the tape during deliberations is a mystery since that is the last mention of the videotape on the record.
 {¶ 47} Although Mr. Janick's counsel carelessly entered the videotape of the traffic stop into evidence, we cannot say that but for this error the result of the proceeding would be different. Rather, the state introduced evidence of Mr. Janick's impairment through the testimony of Trooper Jess and the portions of the video that concerned the field sobriety tests. The tape quite clearly evidences that Mr. Janick was driving while intoxicated. Mr. Janick's speech throughout the traffic stop was slow, slurry, and mumbled. At the beginning of the stop, he seemed to have trouble speaking. He then hesitantly admitted that he was coming from a bar in Geneva, Ohio. He fumbled for his wallet, eventually found his driver's license, and then could not produce the proper registration or any insurance for the vehicle he was driving. When asked to get out of the vehicle, he was initially unsteady on his feet. During the pat- *Page 15 
down, Trooper Jess, again smelling the odor of alcohol, asked Mr. Janick how much he had to drink. Mr. Janick admitted to drinking three shots and six beers, and that his last drink was "about a half hour ago." Moreover, he failed all three of the field sobriety tests that were administered. In addition, the jury was already aware that Mr. Janick had at least one previous OVI conviction since there was a stipulation as to such.
 {¶ 48} Thus, where there is such overwhelming evidence of that Mr. Janick was driving while intoxicated, and where Mr. Janick did not introduce evidence that but for his counsel's deficient performance the result would have been otherwise, we cannot find that but for counsel's error, the result would have been otherwise.
 {¶ 49} Mr. Janick's third assignment of error is without merit.
 {¶ 50} Defendant's Waiver of the Right to Testify
 {¶ 51} In his fourth assignment of error, Mr. Janick asserts that the trial court violated his right to due process when it failed to inquire as to whether Mr. Janick was waiving his right to testify knowingly and intelligently. We find this assertion to be wholly without merit since there is no recognized obligation for the trial court to inquire as to whether a defendant is knowingly and intelligently waiving his right to testify.
 {¶ 52} In Bey, supra, the Supreme Court of Ohio was clear in its holding that a trial court is not required to conduct an inquiry as to whether the defendant's decision to testify is voluntarily and intelligently made. The court explained that "[generally, the defendant's right to testify is regarded both as a fundamental and a personal right that is waivable only by an accused." Id. at 497, see, e.g., Rock v. Arkansas (1987), 483 U.S. 44; Jones v. Barnes (1983),463 U.S. 745, 751; Brown v. Artuz (C.A.2, 1997), 1997 U.S. App. LEXIS 34018. "But in Ohio, courts of appeals [sic] have held that a trial judge is *Page 16 
not required to conduct an inquiry with the defendant about the decision whether to testify." Id., see, e.g., State v. Oliver (1995),101 Ohio App. 3d 587. "In fact, most courts have ruled that neither the United States Constitution nor applicable rules require the trial judge to ask the defendant about the decision not to testify." Id., see, e.g.,Artuz at 73, State v. Walen (Minn. 1997), 563 N.W.2d 742; State v.Gulbrandson (1995), 184 Ariz. 46, 64; Phillips v. State (1989),105 Nev. 631, 632-633; Aragon v. State (1988), 114 Idaho 758, 762-763;Commonwealth v. Hennessey (1987), 23 Mass. App. Ct. 384, 387-390.
 {¶ 53} The court then determined that "[w]e agree and hold that a trial court is not required to conduct an inquiry with the defendant concerning the decision whether to testify in his defense." Id.
 {¶ 54} The court explained that "[r]easons vary for rejecting the requirement. Such an inquiry is thought to be simply unnecessary. Alternatively, it may be thought harmful. As Chief Justice Erickson of the Colorado Supreme Court noted, an inquiry `unduly interferes with the attorney-client relationship.' People v. Curtis (Colo. 1984),681 P.2d 504, 519 (concurring opinion). An inquiry `places the judge between the lawyer and his client and can produce confusion as well as delay.'Underwood v. Clark (C.A.7, 1991), 939 F.2d 473, 476. For example, questioning can lead into the judge's evaluation of the wisdom of the defendant's decision, the substance of the testimony, or simply evoke a dramatic change in a previously carefully considered trial strategy. See, e.g., U.S. v. Goodwin (C.A.7, 1985), 770 F.2d 631, 636. `Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right.' Brooks v. Tennessee (1972),406 U.S. 605, 612." Id. See, also, State v. Thomas *Page 17 
(2002), 97 Ohio St. 3d 309 at ¶ 42-43; State v. Cadiou, 11th Dist. No. 2005-L-206, 2006-Ohio-6537, ¶ 51; State v. McKay, 11th Dist. No. 2001-A-0008, 2002-Ohio-3960, ¶ 43.
 {¶ 55} Thus, as in Bey, nothing in the record suggests that Mr. Janick misunderstood or was unaware of his right to testify, or that Mr. Janick's counsel failed to advise him of his right to do so. Nothing suggests that he wanted to testify and was denied the opportunity to do so. Indeed, the trial court instructed the jury about Mr. Janick's constitutional right not to testify.
 {¶ 56} Mr. Janick's fourth assignment of error is without merit.
 {¶ 57} The judgment of the Ashtabula County Court, Western District, is affirmed.
 DIANE V. GRENDELL, P.J., TIMOTHY P. CANNON, J., concur. *Page 1