Antonio **MALLET**, Petitioner,

v.

David **MILLER**, Respondent.

No. 05 Civ. 00070(VM).

United States District Court,
S.D. New York.

May 26, 2006.

Eleanor Jackson Piel, New York, NY, for Petitioner.

## DECISION AND ORDER

MARRERO, District Judge.

Petitioner Antonio Mallet ("Mallet") filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mallet was convicted in New York State Supreme Court, Bronx County, of second degree murder in violation of N.Y. Penal Law § 125.25(1) and was sentenced to an indeterminate prison term of 20 years to life.[1] In this petition for a writ of habeas corpus, Mallet asserts that he is entitled to the writ on the grounds that (1) he was denied his constitutional right to be present at all stages of his trial, (2) the prosecution failed to disclose evidence favorable to him, including fingerprint evidence and evidence concerning a corrupt police officer, (3) he received ineffective assistance from his former counsel, Jeremy Schneider ("Schneider"), and (4) he is actually innocent of the crime charged. For the reasons set forth below, the Court dismisses Mallet's petition.

## I. BACKGROUND[2]

On September 26, 1996, Mallet was arrested in connection with the shooting death of Michael Ledeatte ("Ledeatte") and was arraigned in Criminal Court, Bronx County the next day. An indictment charging him with Murder in the Second Degree was filed on October 18, 1996. Two months later, on November 18, 1996, Mallet was granted bail.

Mallet's trial commenced March 10, 1999, approximately thirty months after the date of his arraignment, in the New York State Supreme Court, Bronx County (the "trial court"). The prosecution's main witness against Mallet was Gregory Walker ("Walker"), who was a friend of Ledeatte. Walker testified that he and Ledeatte had worked together to steal cars, with Walker assisting Ledeatte on numerous occasions by backing Ledeatte up[3] in a separate vehicle during a theft. Walker testified that he saw Mallet shoot Ledeatte in a parking lot behind a Bronx supermarket and that the shooting was related to the theft of a car. On March 18, 1999, after a jury trial, Mallet was convicted of Murder in the Second Degree. He was sentenced to an indeterminate term of imprisonment of 20 years to life.

In March, 2000, Mallet appealed his conviction to the State Supreme Court Appellate Division (the "Appellate Division") arguing that (1) the prosecution failed to prove Mallet's guilt beyond a reasonable doubt because the critical witness was a criminal whose testimony was inconsistent with physical evidence and who had numerous incentives to lie; (2) the trial court

---

1. See *People v. Mallet*, No. 7180–96 (N.Y.Sup. Ct.1999)

2. The following factual summary derives from the parties' representations contained in the following submissions and any exhibits attached thereto: Petition for Writ of Habeas Corpus, dated January 5, 2005 ("Pet."); Respondent's Affidavit in Opposition to Petition for Writ of Habeas Corpus, dated July 25, 2005 ("Resp't Aff."); Respondent's Memorandum of Law in Opposition to Petition for Habeas Corpus, dated July 2005 ("Resp't Mem."); Memorandum in Support of Petition for Writ of Habeas Corpus and in Opposition to Respondent's Affidavit and Memorandum of Law in Opposition to the Petition, dated

September 20, 2005 ("Pet'r Mem."); and Second Supplementary Affidavit of Eleanor Jackson Piel in Support of CPL § 440.10 Motion for Relief (attached to Pet'r Mem.), dated April 2004 ("Piel Aff."). Except where specifically quoted or otherwise cited, no further reference to these documents will be made.

3. In his testimony at trial, Walker indicated that to "back up" a driver of a stolen vehicle meant to drive closely behind him so that his license plate would not be visible to passing police officers. (*See* Transcript of Trial at 102, *People v. Mallet*, No. 7180–96 (N.Y.Sup. Ct.1999) ("Trial Tr.").)

deprived Mallet of his due process rights by admitting hearsay testimony, without a limiting instruction, that he was in the stolen car business; (3) the trial court violated Mallet's right to be present during all material stages of the trial when he was absent from a robing room conference regarding the testimony of a critical witness (Walker); and (4) the prosecution's misstatements during summation that Mallet had not voluntarily surrendered and was under the scrutiny of federal authorities denied Mallet a fair trial.

On December 12, 2000, the Appellate Division unanimously affirmed Mallet's conviction. *People v. Mallet,* 278 A.D.2d 51, 717 N.Y.S.2d 530, 530 (App.Div. 1st Dept.2000). The Appellate Division found that (1) the verdict was legally sufficient and not against the weight of the evidence, (2) the hearsay testimony regarding Mallet's involvement in the stolen car business was properly admitted to explain events leading up to the crime and had minimal prejudicial effect, (3) Mallet did not have the right to be present during the robing room conference because it "did not involve matters of defendant's peculiar knowledge and did not otherwise have any potential for meaningful participation by defendant," and (4) the prosecution's summation did not deprive Mallet of a fair trial. *Id.*

On April 6, 2001, Mallet's leave to appeal to the Court of Appeals was denied.

In February of 2001, Mallet wrote a letter to the Disciplinary Committee of the First Department outlining perceived deficiencies in Schneider's representation of him, and also stating that he had been framed for murder by the New York City Police Department. (*See* Ltr. to Thomas J. Cahill from Antonio Mallet, dated February 28, 2001, attached as Exhibit J to Piel Aff. ("Disciplinary Comm. Complaint Ltr.").) In May of 2001, Schneider sub-

mitted a letter responding to Mallet's accusations to the Departmental Disciplinary Committee. (*See* Ltr. to Thomas J. Cahill from Jeremy Schneider, dated May 29, 2001, attached as Exhibit A to Piel Aff. ("Disciplinary Comm. Response Ltr.").)

Mallet moved for a writ of error coram nobis on May 14, 2002, alleging, *inter alia,* that he received ineffective assistance of appellate counsel, because that counsel had failed to argue that his trial counsel, Schneider, was ineffective. Mallet's primary contention was that appellate counsel had failed to properly frame his claim on the hearsay testimony as an issue of ineffective counsel, though he also suggested other aspects of his counsel's alleged ineffectiveness.

The Appellate Division unanimously denied Mallet's application for a writ of error coram nobis on May 20, 2003, and leave to appeal the denial was rejected by the New York Court of Appeals on July 16, 2003.

On August 15, 2003, Mallet filed a motion in Supreme Court, Bronx County, to vacate his conviction pursuant to N.Y.Crim. Proc. Law § 440.10 (2006) ("§ 440.10"). In it, Mallet asserted Schneider was ineffective because, among other reasons, he (1) failed to adequately prepare for the case, (2) inadequately cross-examined several witnesses, (3) failed to develop a record regarding whether Walker received a plea bargain, (4) failed to request a limiting instruction on the use of hearsay evidence related to Mallet's participation in the stolen car business, (5) prevented Mallet from testifying on his own behalf, (6) failed to present an adequate defense, (7) did not produce an independent medical examiner, (8) was unwilling to appear at Mallet's sentencing, (9) failed to subpoena certain witnesses, and (10) did not move for a speedy trial. Mallet also argued that the prosecu-

tor knowingly allowed false testimony to go uncorrected.

On April 26, 2004, the Supreme Court, Bronx County denied Mallet's § 440.10 motion. In denying the motion, the court held that many of Mallet's arguments should have been raised on appeal; that the medical records purporting to show Mallet physically incapable of firing a gun do not raise a threshold issue of fact; that Mallet's allegations that he was framed or the victim of police corruption are wholly unsubstantiated; that Mallet was not denied the right to a speedy trial because Schneider either requested or consented to almost every pretrial adjournment; and that none of these matters presented a cognizable issue of ineffective assistance. Mallet's application for leave to appeal the denial of his § 440.10 motion was rejected by the Appellate Division on January 4, 2005.

On January 5, 2005, Mallet filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, the timeliness of which respondent David Miller ("Respondent" or "the State") does not dispute. The merits of the petition are discussed below.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

■ A habeas petitioner in custody pursuant to a state court judgment is entitled to habeas relief only if he can show his detention violates the United States Constitution or laws or treaties of the United States. *See* 28 U.S.C. § 2254(a). Pursuant to 28 U.S.C. § 2254(d)(1), which was codified in its current form by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110

Stat. 1214 (April 24, 1996), this Court may grant habeas relief to a petitioner whose claims were decided on the merits [4] only if the state court's decision: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court precedent]" or "confronts a set of facts that are materially indistinguishable from a [Supreme Court decision] and nevertheless arrives at a [different] result." *Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application" of federal law is not merely an incorrect application, but "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" *Jones v. Stinson,* 229 F.3d 112, 119 (2d Cir.2000) (*citing Francis S. v. Stone,* 221 F.3d 100, 109 (2d Cir.2000)). However, while "[s]ome increment of incorrectness beyond error is required," such increment should not be so great that only state court decisions "so far off the mark as to suggest judicial incompetence" are subject to habeas relief. *Francis S.,* 221 F.3d at 111 (internal quotations and citation omitted).

### B. *EXHAUSTION*

■ This Court can grant a writ of habeas corpus only if the petitioner first

---

4. An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman,* 261 F.3d 303, 313 (2d Cir.2001) (*quoting Aycox v. Lytle,* 196 F.3d 1174, 1178 (10th Cir.1999)).

exhausts all available remedies.[5] 28 U.S.C. § 2254(b)(1). To fulfill this requirement, the petitioner must fairly present his federal claims in state court by "(a) [relying] on pertinent federal cases employing constitutional analysis, (b) [relying] on state cases employing constitutional analysis in like fact situations, (c) [asserting] the claim in terms so particular as to call to mind a specific [constitutional] right ..., and (d) [alleging] a pattern of facts that is well within the mainstream of constitutional litigation." *Boddie v. Edwards*, 2005 WL 914381, at *5, 2005 U.S. Dist. LEXIS 6714, at *17–*18 (S.D.N.Y. April 21, 2005). As long as these claims are presented to the highest state court capable of adjudicating them, the claims are deemed exhausted. *Dorsey v. Kelly*, 112 F.3d 50, 52 n. 1 (2d Cir.1997).

■ Respondent challenges only one of Mallet's claims as being unexhausted, namely Mallet's claim that his counsel was ineffective for failing to properly "bring out in the evidence" and cross-examination the issues surrounding Walker's identification of Mallet. (Pet. at 3.) Mallet claims his counsel should have brought out in testimony that a photo array including Mallet's picture was shown to Walker prior to the in-person line-up, with Walker identifying Mallet in both instances. According to Respondent, this claim is unexhausted because Mallet failed to raise it in any prior proceeding. Mallet argues that the claim is exhausted because his corum nobis petition argued that his appellate counsel was deficient for failing to argue that his trial counsel "should have had a line-up identification before Walker saw the photo and before he was permitted to identify the defendant." (Pet'r Mem. at 7.)

The Court agrees with Respondent and concludes that Mallet did not properly

raise this claim to the highest state court capable of adjudicating it. Mallet quotes from his writ of error coram nobis to demonstrate exhaustion, but the quote is misplaced. Although Mallet did argue that "Walker never gave any description of any shooter to the 911 operator nor, did he give a description of the shooter in any of his statements until, he saw the photo," (Affidavit and Memorandum of Law in Support of Notice for a Writ of Error Corum Nobis at ¶ 21, dated May 14, 2002, attached to Resp't Aff. as Exhibit 3 ("Corum Nobis Mem.")), this point was made in the context of a claim of appellate counsel's ineffectiveness. As noted above, Mallet's corum nobis petition raised the claim that his appellate counsel was ineffective for failing to frame his case as one of ineffectiveness of trial counsel. Thus, it cannot be said that the state court had the opportunity to reach the merits of Mallet's present claim: ineffectiveness of trial counsel for failure to bring out evidence at trial that Walker had seen a photo array and picked out Mallet before identifying him in the in-person line up.

Although the evaluation of appellate counsel and trial counsel is governed by the same *Strickland* standard, *see, e.g., Perez v. Greiner*, No. 02 Civ. 1436, 2003 WL 22427759, at *8 (S.D.N.Y. Oct.23, 2003), there is a distinction between raising a claim of ineffective assistance and making the argument that appellate counsel was ineffective for failing to raise such a claim. Moreover, Mallet's habeas petition and his corum nobis petition, while both noting issues about the basis of Walker's identification testimony and the photo array that preceded the identification, do not clearly state the same basis for a claim of ineffective assistance of trial counsel.

---

5. However, this Court is not precluded from denying a petition on the merits regardless of whether all state remedies were exhausted. *See* 28 U.S.C. § 2254(b)(2).

In his petition, the basis for the claim of ineffective assistance is described as counsel's "fail[ure] to investigate or bring out in the evidence the facts that Walker ... before he identified Mallet, was prompted by the prosecutor's showing him a picture of Mallet." (Pet.¶7.) In his corum nobis petition, Mallet argues that trial counsel should have motioned to suppress the tainted identification and that Mallet should have been entitled to a consensual line up identification before Walker viewed the photo. (*See* Corum Nobis Mem. at ¶¶ 23, 27.) Given these circumstances, the Court concludes that Mallet has not properly presented this claim to the state courts, and it is unexhausted.

■ Nonetheless, this Court may choose to consider the unexhausted claim on its merits, notwithstanding the absence of exhaustion. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Thus, if this court finds that all of the claims presented as a basis for habeas relief lack merit, the Court has discretion to dismiss the petition on its merits even though it may contain some unexhausted claims. *See Perez*, 2003 WL 22427759, at *8. As is discussed in greater detail in Section II.E., the Court finds Mallet's claim of ineffective assistance of trial counsel meritless on all grounds. The Court addresses the various bases for this claim, including the grounds that counsel failed to bring out improper identification evidence, in Section II.E.

## C. RIGHT TO BE PRESENT AT ALL STAGES OF THE TRIAL

■ A criminal defendant has the Constitutional right to be present at all material stages of his trial. *See Monroe v. Kuhlman*, 433 F.3d 236, 246 (2d Cir.2006)

(noting that defendant is "guaranteed the right to be present at any stage that is critical to the outcome of the trial") (*citing Kentucky v. Stincer*, 482 U.S. 730, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987)). This right arises from the Sixth Amendment, but is protected by the due process clause in situations where the defendant is not confronting evidence or witnesses. *See id.; Tirico v. Kuhlmann*, 98 Civ. 096, 2001 U.S. Dist. LEXIS 20244, at *16 (S.D.N.Y. Dec. 6, 2001) (*citing United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985)). However, this right is specifically qualified to those trial proceedings that are substantially related to the accused's ability to defend himself, and does not apply if his presence "would be useless, or the benefit but a shadow." *Snyder v. Massachusetts*, 291 U.S. at 106–07, 54 S.Ct. 330. Thus, a due process right violation occurs only if "[defendant's] presence would [have] contribut[ed] to the fairness of the procedure." *Stincer*, 482 U.S. at 745, 107 S.Ct. 2658.

■ Mallet argues that his due process right to be present at all material stages of his trial was violated because he was not present during a trial court robing room conference concerning possible cross examination of Walker, the prosecution's primary witness, regarding his prior convictions and a pending criminal case in the state of Connecticut. During this conference, Walker's past criminal convictions were discussed and the trial court informed Walker that if he was questioned on the witness stand regarding these convictions he must answer truthfully and possibly provide details about the crimes. (*See* Trial Tr. at 89–90). Walker was also advised that he would not have to incriminate himself if asked about an open, pending larceny case in Connecticut. (*See id.*)

The Court finds that Walker's understanding of his obligation to divulge infor-

mation with respect to prior convictions and the right not to incriminate himself on pending charges had no relation, substantial or otherwise, to Mallet's defense. *See Tirico*, 2001 U.S. Dist. LEXIS at \*17–\*18 ("Nothing in the record indicates that anything Petitioner might have contributed to the [*Sandoval*] conference ... would have affected the trial court's conclusion on an evidentiary matter."). In fact, Mallet argued that he did not know, indeed had never even met, Walker prior to trial, (Pet. ¶¶ 5, 7), so he presumably could have no insight to Walker's criminal history. Furthermore, Schneider was present at the robing room conference and could have objected if the trial court misadvised Walker to Mallet's detriment. There is nothing in the record to suggest that, had he attended this robing room conference, Mallet could have contributed any legal insight regarding Walker's potential testimony that Schneider could not.

Therefore, the Appellate Division's holding that Mallet was not required to be present at the robing room conference because it "did not involve matters of defendant's peculiar knowledge and did not otherwise have any potential for meaningful participation by defendant," *Mallet*, 717 N.Y.S.2d at 530, was not an unreasonable application of, or contrary to, federal law. Accordingly, Mallet is not entitled to habeas relief on this ground.

## D. *DENIAL OF EVIDENCE UNDER BRADY V. MARYLAND*

██ In *Brady v. Maryland*, the Supreme Court held that a criminal defendant's due process rights encompass the obligation of the prosecution to produce evidence that is "material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The evidence is considered material only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).[6] Furthermore, the prosecution must fulfill this obligation even in the absence of a specific request from the defense. *See Bagley*, 473 U.S. at 682, 105 S.Ct. 3375 (endorsing the *Strickland* test for materiality as applicable regardless of whether or not the defense makes a request). Accordingly, the three essential elements of a *Brady* claim are "(1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the State must have suppressed that evidence, either willfully or inadvertently; and (3) prejudice must have ensued." *Eubanks v. United States*, No. 97 Civ. 3891, 2005 WL 1949474, at \*7 (S.D.N.Y. Aug.11, 2005) (*citing Banks v. Dretke*, 540 U.S. 668, 691, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004)).

██ Mallet makes three specific claims under *Brady*, arguing that the prosecution withheld (1) fingerprint evidence from the scene of the murder, (2) information about Walker's status as a paid police informant, and (3) evidence that the police and Walker framed him. For the reasons set forth below (namely that each of these claims is speculative), the Court finds these contentions meritless.[7]

---

**6.** A "reasonable probability" is one that "undermine[s] confidence in the outcome." *Id.; see also Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) ("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.").

**7.** Although not raised as an issue by Respondent, the Court notes that based upon its

Mallet first argues he was denied finger-print records of prints recovered from the crime scene which would have proven he was not present at the time and place Ledeatte was shot. However, there is nothing in the record to support Mallet's assessment of the evidentiary value of the fingerprint records. In fact, according to the latent fingerprint report of seven prints lifted from the crime scene, all the prints were found to be of "no value." (Latent Fingerprint Report, dated Sept 25, 1996, attached as Exhibit N to Piel Aff.) Because Mallet is unable to show that the fingerprint records, reviewed and found to be of "no value" to make a positive identification, would be favorable to his case, the Court denies the *Brady* claim on the merits. *See Tor v. Duncan*, No. 01 Civ. 3984, 2003 WL 22479250 at *3–4 (S.D.N.Y. Nov.4, 2003) (dismissing *Brady* claim that State failed to preserve a bag with potentially exculpatory fingerprint evidence on the grounds that the bag was already tested for prints and none were found, and defendant's suggestion that any recovered prints would be exculpatory was purely speculative and without evidentiary support); *United States v. Gary*, 341 F.3d

829, 834 (8th Cir.2003) (dismissing *Brady* claim that State failed to produce a potentially exculpatory fingerprint card on the grounds that the card's evidentiary value was highly speculative and would be material to the defense only "*if* the print was usable and *if* it matched someone other than [the Defendant]"); *Taylor v. Maggio*, 581 F.Supp. 359, 366 (E.D.La.1984) ("In short, unusable or unreadable prints, which might have been [the Defendant's], is not exculpatory material."), *aff'd*, 727 F.2d 341 (5th Cir.1984).

██ Mallet also charges the State withheld information that Walker was a paid police informant who "was given money and other benefits by the prosecution to encourage his dishonest testimony." (Pet ¶¶ 5, 7.) It is well established that the mere speculation that exculpatory evidence was withheld is insufficient to warrant habeas relief. *See, e.g., Strickler v. Greene*, 527 U.S. 263, 286, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) ("Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review."); *United States v. Avellino*, 136

review of the proceedings in the state court, there is arguable ambiguity as to whether or not this issue was decided on the merits by that court. A judgment not decided by the state court on the merits does not receive AEDPA deference on federal habeas review. *See Cox v. Miller*, 296 F.3d 89, 101 (2d Cir. 2002). This *Brady* issue was presented to the state court in Mallet's § 440.10 motion. In his decision denying the motion, Justice Byrne noted that many of the issues "could and should have been raised on appeal." (Decision on § 440.10 Motion, *People v. Mallet*, No. 7180–96 (N.Y. Sup.Ct., April 26, 2004), attached as Exhibit 9 to Resp't Aff. ("Byrne Decision").) He then goes on to address the merits of many of the claims presented in the § 440.10 motion, explicitly rejecting the claim of ineffective assistance and stating that Mallet's claims that he "was framed, was the victim of police corruption

are wholly unsubstantiated." While that phrase could arguably be deemed a ruling on the merits of Mallet's *Brady* claim for information about Walker's police informant status, evidence of police corruption, and the fingerprints, the decision may be considered ambiguous.

Under these circumstances, rather than unravel the various procedural issues, this Court prefers to address the more straightforward questions presented by the merits of Mallet's petition, for the *Brady* claim fails when reviewed de novo. *See Cox v. Miller*, 296 F.3d at 101 (2d Cir.2002) (finding it unnecessary to analyze whether the state court had adjudicated claim on the merits as disposition would be the same whether court reviewed petitioner's claim de novo or with AEDPA deference); *Mayo v. Duncan*, No. 03 Civ. 8352, 2004 WL 1824111 at *3 (S.D.N.Y. Aug, 13, 2004).

F.3d 249, 261 (2d Cir.1998) ("In the absence of a proffer by [defendant] of any nonspeculative basis for inferring that ... the government had not made available to him all pertinent material in its possession, it was well within the discretion of the court to conclude that no evidentiary hearing was necessary."); *United States v. Navarro,* 737 F.2d 625, 631 (7th Cir.1984) ("A due process standard which is satisfied by mere speculation would convert *Brady* into a discovery device and impose an undue burden upon the district court.").

Here, Mallet offers only conjecture in support of his claim that he was denied information regarding the cited allegations under *Brady.* The only documented basis for the claim that evidence regarding Walker's status as a police informant should have been turned over, a police document referring to Walker as someone "known to" the police department, *was* turned over to trial counsel. (*See* Piel Aff. at 6.)[8] Accordingly, because Mallet has failed to demonstrate that any evidence exists as to Walker's status as a paid informant, the Court deems this contention to be entirely without merit.

Mallet's third and final *Brady* claim is that he was denied information that the police and Walker conspired to frame him. The only support Mallet provides for this accusation is that the allegedly "corrupt police officer" was "[taken] off the case." (Pet. 5). Given the innumerable number of reasons a police officer can be removed from a case, Mallet's conclusion that it was because of a conspiracy between the officer and Walker is sheer speculation. *Cf. Medellin v. Dretke,* 371 F.3d 270, 281 (5th Cir.2004) (rejecting *Brady* claim that government suppressed information about dismissal of witness' misdemeanor charge in exchange for his testimony because the only evidence presented to support claim was that an employee in the prosecutor's office helped the witness obtain a lawyer, and the misdemeanor charge was dropped). Therefore, this claim is denied on the merits because, as explained above, mere speculation that exculpatory evidence was withheld is not sufficient under *Brady,* and the Court cannot compel the production of evidence that is not known to exist. *Cf. United States v. Upton,* 856 F.Supp. 727, 746 (E.D.N.Y.1994) ("The government is under no obligation to turn over that which it does not have.").

## E. *INEFFECTIVE ASSISTANCE OF COUNSEL*

The Sixth Amendment right to counsel has been recognized by the Supreme Court to guarantee the right of effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 685–86, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (*citing McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). To show that counsel was ineffective, Mallet must demonstrate that counsel's performance "fell below an objective standard of reasonableness" and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been differ-

---

8. In the Court's view, very little can be inferred from the statement that a witness is someone "known to" the police department, and it would be a giant probative leap to conclude that this phrase suggests that Walker was a paid informant. Furthermore the Court notes that Schneider did cross examine Walker regarding his cooperation with the prosecution, including questions about a pending criminal case that Walker faced in Connecticut and about any possible promises made to Walker regarding the possibility of relocation because of his concerns for his safety. Schneider tried to ascertain whether Walker expected to receive relocation costs from the government. (*See* Trial Tr. at 164–69, 254–55.)

ent." *Id.* at 688, 104 S.Ct. 2052. In assessing counsel's ineffectiveness, "the court must be 'highly deferential,' must 'consider[ ] all the circumstances,' must make 'every effort ... to eliminate the distorting effects of hindsight,' and must operate with a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir. 2001) (*quoting Strickland,* 466 U.S. at 688–89, 104 S.Ct. 2052); *see also Dunham v. Travis,* 313 F.3d 724, 730 (2d Cir.2002) (noting the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").

■ Mallet argues his counsel was ineffective for (1) failing to inform Mallet of his right to testify, (2) failing to make a speedy trial motion, (3) failing to have the trial judge charge the jury regarding Mallet's evidence of stolen car activity, (4) failing to bring out evidence that Walker had chosen Mallet out of a photo array before identifying him in the in-person line up, (5) failing to appear at sentencing with Mallet, and (6) failing to call certain witnesses or properly investigate the case, including failing to investigate medical records allegedly demonstrating Mallet's inability to pull a trigger. The Court addresses each claim below.

### 1. *Mallet's Right to Testify*

■ Effective assistance of counsel encompasses the duty of counsel to ensure that the defendant understands that he has the right to testify on his own behalf. *Brown v. Artuz,* 124 F.3d 73, 79 (2d Cir. 1997). According to Mallet, Schneider failed to advise him of his right to testify, and if he had known of this right, he "would have told the court and jury that he had no criminal record, that he was engaged in a legitimate business in selling used cars and could have produced evi-

dence of legitimate sales at the time he was accused of being in the business of stealing cars with a decedent he had never met." (Pet'r Mem. at 12).

Initially, the Court notes that there is nothing besides Mallet's own assertion to support the charge that Mallet was not told by his counsel that the decision of whether or not to testify was ultimately his. Schneider, in his Disciplinary Committee response, stated that he and Mallet "discuss[ed] the pros and cons of his testifying" and "mutually agreed that it would not be necessary for him to testify." (Disciplinary Comm. Response Ltr. ¶ 16). This statement undercuts Mallet's assertions, and does indicate that Mallet made the decision not to testify, even if he agreed to do so "mutually" with Schneider. Nonetheless, arguably the statement does not explicitly make clear that Mallet was informed that it was he alone, and not Schneider, who had to make the final decision regarding testifying, as is required by *Brown. See* 124 F.3d at 79 ("Counsel must inform the defendant that the ultimate decision whether to take the stand belongs to the defendant[.]").

■ But, even assuming that Schneider did neglect to inform Mallet of his right to testify, the Court dismisses this claim because Mallet fails to demonstrate a reasonable probability that his proposed testimony would have changed the outcome of the case. *See Strickland,* 466 U.S. at 697, 104 S.Ct. 2052 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed."); *see also Brown,* 124 F.3d at 80–81 (declining to determine whether a "conclusory allegation" that a defendant was prevented from testifying raised an issue of fact where defendant could not demon-

strate prejudice).[9]

Mallet has not demonstrated that the proposed testimony would have altered the outcome of the trial. Indeed, he offers few specifics about the testimony he would have proffered. The Petition states that had Mallet known of his constitutional right to testify, "he would have demanded the right to testify concerning the circumstances and establish his complete innocence of the charges against him." (Pet. ¶ 4.) In the memorandum supporting the petition, Mallet argues that, had he known of his right to testify, he would have "told the court and jury that he had no criminal record, that he was engaged in a legitimate business in selling used cars and could have produced evidence of legitimate sales at the time he was accused of being in the business of stealing cars with a decedent he had never met." (Pet'r. Mem. at 12.)

Even if Mallet had been given the opportunity to testify that he had a legitimate used car business, the testimony he suggests not only does not demonstrate how it would exonerate him, in fact it could actually have been more prejudicial to Mallet, as admitting any involvement with the sale of used cars would have buttressed Walker's testimony that he saw Mallet multiple times at Alpine Motors meeting with Ledeatte because Mallet "needed cars." (Trial Tr. at 111). Though the filings made by Mallet in earlier post-conviction proceedings make various references to Mallet's legitimate business, the only documentation proffered with regard to this business is a single sales receipt from one car dealership, and an affidavit (in the form of a sworn letter) from Stephen Yu, stating that he is a friend of Mallet's and that Mallet is a legitimate

9. While the Court recognizes that Mallet's claim that he was not advised of his right to make the ultimate decision as to whether or not to testify "involve[s] a generic claim—one that can be, and is often made in any case in which the defendant fails to testify—based solely on his own highly self-serving and improbable assertions," *Chang v. United States,* 250 F.3d 79, 86 (2d Cir.2001), it is reluctant to dismiss Mallet's claim on the grounds that he has not demonstrated that he was not advised of his rights. Although a habeas court, when "faced with self-serving allegations that are contradicted by a credible affirmation by a trial attorney ... may choose to credit the attorney and dismiss the ineffective assistance of counsel claim without further hearings," *Castrillo v. Breslin,* No. 01 Civ. 11284, 2005 WL 2792399 at *13–14, 2005 U.S. Dist. LEXIS 24877 at *39–40 (S.D.N.Y. Oct. 11, 2005), in the instant case there is no sworn statement from Schneider contesting Mallet's version of events. While Schneider's submission to the disciplinary committee asserts that the decision for Mallet not to testify was made together, and that Schneider "at no time ... unilaterally decided that [Mallet] should not testify," this submission was made in letter form and is not a sworn statement. In addition, the government attorney's affidavit opposing the Petition states that he had a conversation with Schneider in which Schneider "recalled that with regard to Mallet testifying at trial, there was never a point at which Mallet stated that he wanted to testify and Mr. Schneider had to dissuade him." (Resp.Aff.¶ 12.) Problematically, this statement also does not make clear that Schneider advised Mallet of his absolute right to make the decision as to whether or not to testify, but even if it did, it does not constitute sworn statement by trial counsel. While it is Mallet who bears the burden of demonstrating his claim, *see Chang,* 250 F.3d at 86, the Court will not dismiss the claim without any corroborating evidence in the record to show that Mallet was properly advised of his rights. *Compare Davison v. United States,* No. 00 CV. 3064, 2001 WL 883122, at *7–*8 (S.D.N.Y. Aug.3, 2001) (blanket assertions that trial counsel deprived petitioner of the right to testify rejected in absence of objective evidence to support the claim or discredit trial counsel's sworn statement that he explained the right to testify). The Court does not find it necessary, however, to grant Mallet's request for a hearing as it finds, as discussed above, that Mallet fails to demonstrate that there is a reasonable probability that his proffered testimony would have resulted in an acquittal, and thus he fails to meet his burden under the second prong of *Strickland.*

businessman. (*See* Original Agreement and Bill of Sale from B.C. Benjamin Auto Sales Inc., attached as part of Exhibit H to Piel Aff.; Letter to Whom it May Concern from Stephen Yu, dated January 5, 2002, attached as part of Exhibit L to Piel Aff. ("Yu Ltr.").) The receipt in itself does not demonstrate anything about Mallet's business, as it does not speak to what the cars were used for, or where they had come from, or address the allegation that they included stolen parts. Similarly, Stephen Yu's affidavit is insufficient to establish the legitimacy of Mallet's business. Indeed, calling Yu to the stand could have presented significant risks for Mallet. According to Yu's sworn letter on behalf of Mallet, he "met Mr. Mallet through the course of doing business with my client, Alpine Motor Cars, Inc., located in the Bronx." (Yu Ltr.) Confirming a connection between Mallet and Alpine Motors could have given credence to Walker's testimony that he saw Mallet and Ledeatte meet at Alpine Motors on multiple occasions. (Trial Tr. at 111).

Thus, while Mallet's filings in the various proceedings following his conviction have claimed that he could have offered additional evidence of his legitimate business had counsel investigated this issue and allowed him to testify, he has not submitted sufficient evidence to substantiate these claims (*e.g.*, further business records).[10] In addition, Mallet would have been subject to cross-examination, and the Court cannot speculate as to how credible the jury would have found him as a witness. As Mallet has failed to establish "a reasonable probability that [his] testimony would have led to an acquittal," *Rega v. United States*, 263 F.3d 18, 21 (2d Cir. 2001), the Court cannot conclude that the state court's determination that Mallet's various petitions and appeals did not present a cognizable claim of ineffective assistance was an unreasonable application of federal law.

## 2. Counsel's Failure to Make a Speedy Trial Motion

 Mallet's case was pending for thirty months prior to trial, and for much of that time the prosecution was unable to locate its primary witness, Walker. In denying Mallet's motion to vacate the judgment under § 440.10, Justice Byrne found that "nearly every pretrial adjournment was at request of counsel or on consent." (Byrne Decision.) Although Mallet contests this finding, he has presented no evidence to support an alternate version of events.[11] Mallet argues that even if one

10. In his § 440.10 motion Mallet argued that had he known that he, and not his lawyer, had the right to make the ultimate decision as to whether or not to testify, he would have taken the stand to testify that he had never met the victim or Walker. (*See* Memorandum of Law at 17, submitted in support of Mallet's § 440.10 motion, dated August 15, 2003, attached as Exhibit 7 to Resp't Aff.) Although Mallet does not offer these specifics as to his proffered testimony in his habeas submission, the Court notes that it also does not view such testimony, if proffered, as demonstrating a reasonable probability of altering the jury's verdict. Any claim that he had never met Walker before would have to overcome the testimony of Walker identifying Mallet to the police by his acknowledged street name of

"Cilo," and indicating substantial knowledge of Mallet's business that may be inconsistent with a total absence of acquaintance between two people. Mallet has not, so far as this Court is aware, offered any explanation (outside of his totally unsubstantiated claim of a police framing) as to how Walker would have known his nickname had the two never met before.

11. This Court must presume factual findings by the state are correct unless the Mallet rebuts such a presumption by clear and convincing evidence. 28 U.S.C. § 2254(e). Mallet offers nothing to dispute the State besides the following conclusory, unsupported statement: "[t]here is nothing in the record to support this statement." (Pet'r. Mem. at 9.)

accepts this finding, then "the fact that counsel agreed to the multiple adjournments that permitted the case to languish on the trial calendar for 32 months ... this issue then becomes just one more aspect of counsel's ineffective advocacy." (Pet Mem. at 9.)

In pursuit of this aspect of his ineffective assistance claim, Mallet raises both a constitutional speedy trial claim and a statutory claim, asserting that Schneider should have made a speedy trial motion pursuant to N.Y.Crim. Proc. Law 30.30 (2006) (" § 30.30").[12] With regard to the constitutional claim, the Supreme Court has enumerated four factors to be considered when determining if a speedy trial violation has occurred: (1) whether the delay between indictment and trial was uncommonly long, (2) whether the government or defendant was more responsible for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the extent of prejudice defendant suffered as a result of the delay. *See Barker v. Wingo,* 407 U.S. 514, 533, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). These factors must be considered together with any other circumstances that may be relevant in determining whether or not there has been a constitutional violation.

There appears to be some confusion in the parties' submissions with regard to the nature of Mallet's speedy trial claims. In his § 440.10 motion, Mallet argued both that his right to a speedy trial had been violated, and that he received ineffective assistance of counsel on the basis that his counsel failed to move to dismiss his case. As noted above, Justice Byrne noted in his denial of Mallet's § 440.10 motion that the record showed that the defense was equally to blame for the pretrial delay, and

further ruled that none of "these matters present a cognizable issue of ineffective assistance." (*See* Byrne Decision.) In his Petition, Mallet appears to raise the speedy trial issue only in the context of an ineffective assistance claim, arguing that his counsel's failure to move for dismissal, and his consent to adjournments, constitutes ineffective assistance. Respondent, however, has not made a direct response to this claim, but instead maintained that there was no error in the state court's denial of Mallet's speedy trial claim, with no argument on the speedy trial aspect of the ineffective assistance claim. Though overlapping, this Court views the question of a speedy trial claim and a claim of ineffective assistance of counsel based on the failure to make a speedy trial motion as separate questions, involving distinct considerations. Indeed, two of the four factors to be considered under *Barker* when a constitutional speedy trial violation is claimed—whether the government or defendant was more responsible for the delay, and whether the defendant asserted his speedy trial right—implicate counsel's effectiveness.

■ Thus, the Court addresses Mallet's claim that his counsel's failure to make a speedy trial motion and his willingness to consent to adjournments constituted ineffective assistance of counsel by depriving him of both his statutory and constitutional right to a speedy trial. Neither claim provides a basis for relief. First, Mallet's claim that Schneider was ineffective by reason of his failure to make a motion under § 30.30 is patently meritless, as § 30.30, by its terms, does not apply to cases brought under the statute under which Mallet was charged (*i.e.*, murder cases). *See* § 30.30(3)(a) (stating that

---

**12.** According to § 30.30, a motion to dismiss must be granted if the State is not ready for trial within "six months of the commencement of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a felony."

speedy trial rule outlined in subdivisions one and two of rule "do not apply to a criminal action wherein the defendant is accused of an offense defined in sections 125.10, 125.15, 125.20, 125.25 and 125.27 of the penal law."); *see also Jones v. Spitzer,* 01 Civ. 9754, 2003 WL 1563780, at *18 (S.D.N.Y. March 26, 2003) ("Obviously, the failure to make a meritless section 30.30 motion does not amount to ineffective assistance.").

The Court also finds Mallet's argument as to his constitutional right to a speedy trial unavailing. Mallet contends that he "was denied his constitutional right to a speedy trial by his lawyer's agreeing to numerous adjournments requested by the prosecution because of the unavailability of their main witness." (Pet.¶ 12.) However, bearing in mind the standard that governs an ineffective assistance claim, and the general rule that a habeas petitioner "will be able to demonstrate that trial counsel's decisions were objectively unreasonable only if there was no tactical justification for the course taken," *Lynn v. Bliden,* 443 F.3d 238, 242 (2d Cir.2006) (internal quotation marks, citations and alterations omitted), this Court cannot conclude that counsel's actions fell below an objective standard of reasonableness. The record shows that Schneider filed defense motions in the case and also conducted a *Wade/Huntley* hearing[13] prior to trail, factors that can normally be expected to lengthen the time before trial. Further, without any record of adjournments or transcripts of pre-trial conferences before it, this Court can only guess as to what reasons may have been given for adjournments, or what discussions took place. Without this, the Court cannot conclude that there was "no tactical justification" for the adjournments, *id.,* and credits Jus-

tice Byrne's finding that nearly every pretrial adjournment in Mallet's prosecution occurred at counsel's request or consent.

■ In addition, the Court find's Schneider's failure to make a speedy trial motion does not constitute ineffective assistance under the second prong of *Strickland,* as the motion was unlikely to succeed on its merits. Even if Schneider had moved for a speedy trial, and had contributed less to the pretrial delay, under the four factors articulated in *Barker,* it is not likely that such a motion would have been granted. Though a thirty-month delay before trial is certainly substantial, it is not decisive, particularly in advance of a trial for murder. Indeed, there is extensive case law finding no Sixth Amendment violation for delays approximately equal to or much greater than thirty months. *See, e.g., Flowers v. Warden,* 853 F.2d 131, 133 (2d Cir.1988) (citing multiple Second Circuit opinions finding no speedy trial violation for delays ranging from 21 months to 6 years); *Parilla v. Goord,* No. 02 Civ. 5443, 2004 U.S. Dist. LEXIS 28086 at *12–13, (S.D.N.Y. July 9, 2004) (dismissing speedy trial claim in murder case with 34 month delay and citing Supreme Court and Second Circuit cases where delays between 58 months to 7 years were held not to violate the Sixth Amendment).

■ Furthermore, the reason for the delay—inability to locate the chief prosecution witness—is mentioned in *Barker* as one which justifies some delay. 407 U.S. at 531, 92 S.Ct. 2182; *see also United States v. Fasanaro,* 471 F.2d 717 (2d Cir. 1973). The right of a speedy trial is not meant to "preclude the rights of public justice," *Barker,* 407 U.S. at 522, 92 S.Ct. 2182 (*quoting Beavers v. Haubert,* 198 U.S. 77, 87, 25 S.Ct. 573, 49 L.Ed. 950

---

**13.** *See United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *People v.*
 *Huntley,* 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965)

(1905)), which is precisely the risk of dismissal on the basis that a key witness is not available within a prescribed period of time. Finally, Mallet fails to demonstrate a significant degree of prejudice under the fourth prong of *Barker*. He has not identified any aspects of the defense case that were jeopardized by the delay, for example the unavailability of any defense witnesses or evidence. In addition, Mallet was granted bail on November 18, 1996, a mere two months after his indictment was filed, and thus was not a victim of oppressive pre-trial incarceration.

Given all of these considerations, the Court cannot conclude that the state court determination of this issue, denying the claim of ineffective assistance, was an unreasonable application of clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d).

### 3. *Jury Charge Regarding Evidence of Mallet's Stolen Car Activity*

■ Walker testified that he had seen Ledeatte and Mallet meet at Alpine Motors on multiple occasions whenever Mallet "needed cars." (Trial Tr. at 111). Over Schneider's objection, the testimony was allowed in order to illustrate an alleged relationship between Mallet and Ledeatte. (Trial Tr. at 105–111; 388–89.)

At a charge conference, Schneider asked the court to "charge the jury that [Mallet] is not charged with any crime other than murder, that they are not to take that into consideration in deciding the case[, and] that was only offered to show an alleged background or an alleged relationship between the parties." (Trial Tr. at 389). In response, the court said it would grant Schneider's request, but that he should reconsider:

I want you to think that through and let me know tomorrow morning. I will grant that request if you stand by it.

My concern there is you are going to highlight it. There's very little, little evidence in this case about this relationship. . . . I allowed it in because otherwise the case makes no sense, as I indicated to you through the outset over your objection. . . . It seems to me that if I start to discuss that at some length I am going to be highlighting it.

(Trial Tr. at 389). Schneider's agreed to reconsider, and never reinstated his charge request. (Trial Tr. at 389.)

In light of the specific recommendation by the trial court, it is difficult to fault Schneider for not reinstating the request. The Court has no basis to conclude that this course was anything other than a strategic decision, which the Court cannot use hindsight to second-guess. *See Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight."). Accepting the trial judge's recommendation on this point, given the strategic considerations possibly underlying a decision not to pursue this charge, does not fall below an objective standard of reasonableness. Therefore, the Court cannot find that the state court's dismissal of this contention was an unreasonable application of federal law.

### 4. *Identification of Mallet in Photo Array Prior to Line–Up*

■ As was discussed in Section II.B. above, though the Court agrees with Respondent that Mallet's photo identification claim is unexhausted, the Court nonetheless will dismiss this claim on its merits pursuant to § 2254(b)(2). Mallet argues in his Petition that Schneider was ineffective because he "failed to investigate or bring out in the evidence the fact that Walker . . . before he identified the Petitioner, was prompted by the prosecutor's showing him

a picture of Mallet." (Pet. § 7.) Based on everything in the record, the Court can only conclude that this claim is a reference to the photo array that was shown to Walker, in which he identified Mallet, before Walker identified Mallet in an in-person line up. The photo array was the subject of the *Wade* portion of the *Wade /Huntley* pretrial hearing. *See Wade*, 388 U.S. 218, 87 S.Ct. 1926. At the hearing, Schneider argued that the Walker's identification should be suppressed because the photo array tainted Walker's identification of Mallet in the in-person line-up, contending that Walker was pre-disposed to choose Mallet as he had already been shown a photograph of him. The Court presiding over the hearing denied the motion to suppress, finding that the identification procedures were not tainted.[14]

Although the precise argument is not entirely clear, it appears that Mallet is claiming that Schneider was ineffective because he did not reference this photo array in any of his cross examinations of the prosecution's witnesses. Mallet's claim that Schneider failed to investigate the circumstances surrounding the improper obtaining of the photo is belied by the transcript of the suppression hearing. (*See* Wade Tr. at 5, 41–42.) Further, because Walker testified that he had met Mallet on numerous occasions prior to this incident, there is an independent basis for his identification of Mallet. Schneider may have chosen to not raise the photo

array issue for reasonably plausible strategic reasons, for instance because it would provide another opportunity for Walker to explain in front of the jury that he knew Mallet, as someone involved with the stolen car business and who was a customer of the deceased, prior to the murder. On this basis, Schneider may have concluded that the slight and speculative gains to be had from questioning Walker regarding the photo array that preceded the in person identification would be outweighed by the consequences of providing Walker with another opportunity to testify that he knew Mallet. Schneider may also have been concerned that some jury members might look less favorably on his client simply because the police had a picture of him on file, even if such a prejudice would be unwarranted. Such determinations fall well within the realm of strategic decisions that an effective attorney might make, and the Court cannot conclude that Schneider's performance in this regard falls below an objective standard of reasonableness. Thus this claim is rejected on its merits.

### 5. *Counsel's Failure to Represent Mallet at His Sentencing*

■ Among his many claims, Mallet asserts that Schneider was ineffective because he failed to appear with Mallet at his sentencing. (Pet.¶ 9, 11.) However, the record indicates that Mallet was represented at sentencing by other counsel. (*See*

---

14. In his decision from the bench at the close of the hearing, Justice Tonetti stated:

"[H]aving obtained a photograph of Mallet, [the officer] then placed that photo array, which I consider to be a very fair and appropriate array of six male blacks that were shown to this eye-witness, from which he picked the defendant out. They then proceeded to conduct a line-up and counsel was astute enough to even make the argument, the Court is very very much aware of that, he's now being asked to look at a line

up that contains the same individual whose photograph he has just picked out of an array some hours earlier, but to whatever degree they were able to act as diligently that they could, they found themselves six male black fillers and conducted a line-up and this witness once again picked the defendant out of the line up. The Court finds that the line up procedures were not tainted, that they in no way violate the Defendant's Constitutional rights [.]"
(Wade Tr. at 78–79.)

Memorandum of Law at 20, submitted in support of Mallet's § 440.10 motion, dated August 15, 2003, attached as Exhibit 7 to Resp't Aff.) Mallet claims that Schneider was unresponsive following the verdict and, because of the lack of communication and apparent unwillingness of Schneider to continue to work with him, he was forced to hire another attorney to represent him at sentencing. These facts do not raise a basis under the Sixth Amendment for an ineffective assistance of counsel claim relevant to the adequacy of counsel's performance at trial. There is no constitutional right to have any particular attorney represent a defendant at sentencing, or to have the same attorney at all stages of the proceeding. Whatever reason caused Schneider to not represent Mallet at sentencing, there is no constitutional claim arising out of that circumstance.

### 6. Counsel's Failure to Call Certain Witnesses or Properly Investigate the Case

■ Mallet argues Schneider was ineffective because he failed to call witnesses on his behalf. (Pet.¶¶ 5, 11.) It is not clear from the petition which witnesses Mallet alleges should have been called. However, in Mallet's § 440.10 motion, he argued that his girlfriend, Jamilah Bryant, should have been called as an alibi witness, and also that two detectives involved in the original arrest, Joseph Nieves and Donald Gannon, should have been called in his defense.

Mallet's alibi is that he visited Bryant the night of the murder, which occurred at approximately 2:30 a.m., and spent the night at her house. Bryant gave a different account in the statement she gave to the police following Mallet's arrest. There she reported she and Mallet arrived at her apartment, after leaving her sister's home, at around 1:00 a.m. on the night of the murder. Her written signed statement recounts that Mallet: "advised me he was going to use the phone around 1:10 a.m. and he left the apt. I came out of the shower and fell asleep watching T.V. I don't know what time he came back. As I went to sleep he wasn't in yet." (Statement of Jamilah Bryant, dated September 23, 1996, attached as part of Exhibit J to Piel Aff.) The written statement is also signed by Officer Nieves. In his letter to the Disciplinary Committee about Schneider, Mallet claimed that this statement was coerced out of Bryant by Nieves, who threatened to have Ms. Bryant's daughter taken from her. (Disciplinary Comm. Complaint Ltr. at 1.) In the affidavit attached to Mallet's supporting memorandum of law, Mallet's current counsel states that Ms. Bryant was "evidently ready to state that she was with the defendant all that evening," yet she gave the contrary statement. (Piel Aff. ¶ 4.)

However, there is no compelling direct evidence that Bryant was ever willing to give such a statement. In his response to the disciplinary committee, Schneider states that both he and the investigator who worked on Mallet's case spoke with Bryant. (See Disciplinary Comm. Response ¶¶ 4, 8.) Schneider reports that he was never told by Bryant of any police threats, coercion, or misconduct. (Id. ¶ 4.) On each occasion that he refers to Bryant, he identifies her as the "alibi" witness (Id. ¶¶ 4,8) (quotation marks in original).

The Court finds no sufficient basis upon which to conclude that Bryant's testimony would have been helpful to Mallet. Even assuming that she were to testify that Mallet was with her all night, her statement would be impeached by her inconsistent and potentially inculpating statement to the police. Opening Bryant up to such impeaching evidence in the form of a contradictory statement given to police close

to the time of the event could have been extremely damaging to Mallet. Bryant's statement to police would provide substantial grounds for suspicions about Mallet's whereabouts on the night of Ledeatte's murder and would likely cause the jury to wonder whether Mallet spoke with Ledeatte on the phone at the time Bryant indicated he made a call and left Bryant's residence to meet him.

Mallet's assertion that the two police detectives should have been called as part of his case is similarly unavailing. Mallet asserts that Nieves was the arresting office and the officer who witnessed Walker's inconsistent statements made on the night of the murder.[15] However, there was no need to call a police detective to the stand to impeach Walker's testimony, as each of his contradictory accounts of the night of the murder were written (or, as regards the 911 call, transcribed) and provided to the defense. Indeed, the various accounts given by Walker were discussed at trial by both the prosecution and the defense, and Schneider used the statements to impeach Walker. (*See* Trial Tr. at 219–52.) Mallet has not set forth any other compelling argument suggesting how calling Nieves to the stand would have made a material difference in the verdict, nor has he asserted a persuasive argument that Detective Gannon should have been called by the defense, particularly given the risks of allowing the jury to hear additional inculpating testimony from two more police officers.

In light of these considerations, the Court cannot conclude that Schneider lacked reasonable tactical reasons for a decision not call these witnesses, and agrees with the state court's reasonable application of federal law in denying this claim.

▓▓▓ Mallet also argues Schneider was ineffective by reason of his failure to properly investigate the case, including the claim that Schneider did not investigate and introduce medical reports related to injuries Mallet had previously sustained to his left and right hands. According to Mallet, these reports would prove that he was physically incapable of pulling the gun trigger. In his denial of Mallet's § 440.10 motion to vacate the judgment, Justice Byrne found that the medical records "purporting to show [that Mallet was] physically incapable of firing the weapon fails to raise a threshold issue as to that fact." (*See* Byrne Decision, also finding that none of the issues "present a cognizable issue of ineffective assistance.".) After reviewing the medical reports, the Court is not convinced that they prove anything with respect to Mallet's ability to fire a gun, and thus cannot conclude that the state court's denial of this claim was based on an unreasonable determination of the facts, or application of the law, in light of the evidence presented to it. *See* 28 U.S.C. § 2254(d).

First, the reports include internal inconsistencies that make their reliability somewhat suspect.[16] According to Dr. Harrison, "[Dr. Schwartz] examined [Mallet's] left hand which had been injured in the

---

**15.** Nieves is also the officer that Mallet accuses of being involved in his framing. In his supporting memorandum, Mallet asserts, without any corroboration, that "on information and belief [Nieves] was fired by the Police Department prior to trial, presumably for bad conduct." (Pet Mem. at 10.) As this assertion is wholly unsubstantiated and gives

no indication that the alleged "bad conduct" had anything to do with Mallet's case, the Court does not address it.

**16.** Respondent asserts, and Mallet does not dispute, that the medical records were prepared for litigation arising from two workplace accidents. (Resp't Aff. ¶ 19.)

airport accident ... I was told the patient was right-hand dominant, and Dr. Schwartz apparently was told the patient was left-hand dominant." (Ltr. To Whom it May Concern from Dr. Leonard Harrison, dated Feb. 9, 1995, attached as part of Exhibit 2 to Piel Aff.) Given that Dr. Harrison was providing an orthopedic opinion on Mallet's right hand injury, this statement undermines the evidentiary value of the reports. Further undermining Mallet's argument is that the reports fail to provide the Court with data related to the strength required to pull a gun trigger. For example, Dr. Schwartz' diagnosis that Mallet "is unable to make a completed fist [with his left hand] with the grip measuring 30 [pounds]" does not map to his ability to have the requisite strength to fire a gun. (Ltr. To Ms. Genevieve Flicker from Dr. Horla H. Schwartz, dated Oct. 3, 1989, attached as part of Exhibit 2 to Piel Aff.) Mallet offers only the conclusory argument that the medical records "would have shown that Mallet was unable to pull a trigger of a gun by reason of prior injuries." (Pet.¶ 5.) On this record, the Court cannot find Mallet's argument to be meritorious.

■ More fundamentally, in his response to the disciplinary committee Schneider claims that he was never told about these medical reports. Mallet does not present sufficient evidence to counter this answer, and has not demonstrated that he did indeed make Schneider aware of such records. A claim of ineffective assistance cannot be supported by conclusory assertions alone. It is too easy for a defendant to claim after the fact, without supporting evidence, that he provided leads and information to his counsel that would have resulted in his exoneration if used. Finally, as discussed above, even if Mallet had provided this medical information to Schneider, Schneider could have concluded, as a matter of strategy, not to present the jury with contradictory medical reports.

■ The Court is also unpersuaded by Mallet's other claims regarding Schneider's inadequate investigation. While Mallet claims that Schneider should have subpoenaed various records from Alpine Motors, including videotapes surveying that business's property and records showing that Mallet did not purchase a certain vehicle there, and should have presented character witnesses and other witnesses in his defense, he does not offer evidence to support his claims or how it necessarily would have exculpated him. For example, while Mallet has submitted with his petition photographs of the video cameras at Alpine Motors, arguing that his counsel should have subpoenaed the video tapes from Alpine Motors to show that he had never met Ledeatte or Walker there, the photographs are not sufficient to demonstrate prejudice—in other words—that had the surveillance tapes been investigated, there would have been a different outcome at trail. First, even assuming that the surveillance cameras depicted in the photos capture every corner of the Alpine Motors property where a meeting could have taken place, there is no evidence that Alpine Motors made videotapes from those cameras and retained those videotapes. Even if any such videotapes were available, Schneider would have only been able to use the tapes to try to prove a negative, i.e., that because there was no recording of a meeting at Alpine Motors on tape, Mallet had never met Walker there or anywhere else. As Mallet has failed to demonstrate that such tapes even exist, he has far from demonstrated that further investigation of these videotapes, and their introduction at trial, would have resulted in a different

outcome at trial. *See Strickland,* 466 U.S. at 688, 694, 104 S.Ct. 2052.

Furthermore, Schneider worked with a hired investigator on the case, and Schneider and Mallet's correspondence with that investigator, attached to the parties' submissions, demonstrates that the factual background of the case was investigated. Schneider's submission to the disciplinary committee explains that both he and the investigator visited the crime scene and spoke with potential witnesses, and that the investigator also visited certain locations he was advised of by Mallet, obtained documents and information for the case, obtained information regarding the prosecution's witnesses, took photographs of the crime scene, and prepared various subpoenas. (Disciplinary Comm. Response ¶¶ 8, 17.) On this record, the Court cannot conclude that the state court applied federal law unreasonably in rejecting Mallet's claim for ineffective assistance of counsel on the basis of inadequate investigation.

## F. ACTUAL INNOCENCE CLAIM

██ A claim of actual innocence is rarely successful, and requires a petitioner to buttress his case with "new reliable evidence ... that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). This Court cannot make an independent judgment in light of the new evidence and existing evidence in the record of whether Mallet is actually innocent, but rather must query "whether it is more likely than not 'that no reasonable juror would have found [the Petitioner] guilty.'" *Doe v. Menefee,* 391 F.3d 147, 163 (2d Cir.2004) (*quoting Schlup,* 513 U.S. at 329–30, 115 S.Ct. 851).

Mallet falls woefully short of this evidentiary burden. He proffers no new evidence whatsoever, instead rehashing es-sentially the same arguments made to the state courts in numerous distinct proceedings. Without new evidence, Mallet cannot support his claim of actual innocence. Consequently, Mallet's actual innocence claim is denied.

## G. THE REQUEST FOR AN EVIDENTIARY HEARING IS DENIED

██ According to 28 U.S.C. § 2254(e)(2), if Mallet "failed to develop the factual basis of a claim in State court proceedings," this Court may not hold an evidentiary hearing unless Mallet can demonstrate that the factual predicate of his claim "could not have been previously discovered through the exercise of due diligence," and "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found [Mallet] guilty." 28 U.S.C. § 2254(e)(2). However, these restrictions on the Court's discretion to grant an evidentiary hearing apply only when "there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Channer v. Brooks,* 320 F.3d 188, 199 (2d Cir.2003) (*quoting Williams v. Taylor,* 529 U.S. 420, 432, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000)). Therefore, the restrictions do not apply if Mallet has been diligent in investigating and pursuing his claim in state court. *Id.*

Mallet requests an evidentiary hearing in order to "subpoena witnesses and secure further evidence which will show additional deprivations of his constitutional rights not known to him at the present time, but which he believes occurred in an unfair trial." (Pet.¶ 12(g)) (emphasis added). This Court cannot conclude that Mallet was diligent in pursuing claims in state court that he admits he does not know even exist. Therefore, the restrictions set forth in § 2254(e)(2) apply, and the Court

is will not grant Mallet an evidentiary hearing. It is impossible to assess whether claims Mallet merely hopes will develop from such a hearing would preclude any reasonable fact finder from finding Mallet guilty. *Cf. Williams,* 529 U.S. at 437, 120 S.Ct. 1479 ("Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.").

### III. *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that the petition of Petitioner Antonio Mallet for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

The Clerk of the Court is directed to close this case.

As Mallet has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *Lozada v. United States,* 107 F.3d 1011, 1014–16 (2d Cir.1997), abrogated on other grounds by *United States v. Perez,* 129 F.3d 255, 259–60 (2d Cir.1997).

SO ORDERED.