VICTOR MARRERO, United States District Judge.
Defendant Diogenes De Jesus Sierra ("Sierra") was charged in this action on *190 two counts of a Superseding Indictment: (a) conspiracy to distribute and possess with the intent to distribute one kilogram or more of mixtures and substances containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A) ; and (b) intentionally and knowingly distributing and possessing with the intent to distribute heroin, in violation of 21 U.S.C. §§ 812, 841(a), 841(a)(1), and 841(b)(1)(C). (See Dkt. No. 34.)[1]
After a four-day trial in July of 2012, the jury failed to reach a verdict. The Court then conducted a retrial, which also lasted four days, in October of 2012. On that occasion, the jury returned a verdict convicting Sierra on both counts. Sierra appealed his conviction and sentence to the United States Court of Appeals for the Second Circuit. By Mandate dated November 24, 2015, the Circuit Court affirmed Sierra's judgment of conviction. (See Dkt. No. 124.)[2]
Sierra now moves for an order pursuant to 28 U.S.C. § 2255 (" Section 2255") to vacate, set aside, or correct his conviction and sentence. ("Motion," Dkt. No. 125.) Sierra's Motion claims that he was deprived of his Sixth Amendment right to effective assistance of counsel based on three arguments described in detail below.
The Government opposes the Motion. ("Government Opposition," Dkt. No. 129.) Though the Court granted Sierra's request for an extension to reply to the Government Opposition (see Dkt. No. 131), Sierra did not file any further response. For the reasons discussed below, Sierra's Motion is DENIED.
I. DISCUSSION
The facts of this case are summarized in the Court's ruling denying Sierra's post-verdict motion for a judgment of acquittal and for a new trial. (See Dkt. No. 80.) The evidentiary background is restated here to the extent relevant to the Court's review of Sierra's Motion.
A. TRIAL EVIDENCE
At trial, the Government presented testimony and physical evidence based on law enforcement surveillance and other investigation results establishing that, throughout the course of the morning and mid-afternoon of April 14, 2010, Sierra and his brothers -- co-conspirators David and Robert Sierra -- engaged in suspicious conduct involving repeated entering and exiting of the building at 2771 Bainbridge Avenue in the Bronx (the "Building"). That activity was accompanied by the co-conspirators' extensive "counter-surveillance" in the vicinity of the Building. These events led the law enforcement agents who were conducting a narcotics investigation to believe that the co-conspirators were engaged in a "dry run" incident to a transaction involving controlled substances. (See, e.g., Trial Tr. 39:13-52:25, 171:23-181:23, 193:17-202:3; see also Gov't Exs. 403, 404, 405, 406.)
The Government presented testimony establishing that, shortly after Sierra's counter-surveillance measures, another co-conspirator, Robert Santos ("Santos"), was observed exiting the Building carrying a small blue gift bag. (Trial Tr. 181:18-182:8.) The law enforcement officers testified that they followed Santos to a restaurant, where they approached him and inquired about the bag that was then located under a table where Santos was sitting. Santos denied the bag belonged to him. Upon searching the bag, the agents discovered *191 that it contained more than $ 50,000 in United States currency. At that point, Santos was arrested and his cell phone was seized. (Id. 88:10-93:11, 201:20-206:19; see also Gov't Exs. 401, 402.)
The Government presented testimony that, after having been informed of Santos's arrest, a law enforcement officer observed Sierra exiting Apartment 1K in the Building ("Apartment 1K") with three other individuals, including Robert Sierra. The agent proceeded to arrest Sierra and Robert Sierra in the lobby of the Building. An envelope containing heroin was found on Robert Sierra. Immediately thereafter, a search was conducted of Apartment 1K. There, the agents recovered drug manufacturing and distribution paraphernalia, including thousands of empty glassine envelopes bearing trademark stamps of narcotics brands, a pestle that later tested positive for the presence of heroin, a quantity of glassine envelopes already packaged with heroin, several small gift bags similar in size and style to the blue bag containing the $ 50,000 in cash that was recovered from Santos, and approximately $ 200,000 in United States currency. The agents also recovered a "drug ledger," which contained a record of heroin sales, names of customers and contact numbers, and quantities and prices of heroin involved in the documented transactions. (See Trial Tr. 99:16-103:3, 296-308; Gov't Exs. 201, 202, 211, 220, 221.)
In examining the drug ledger, government agents compared certain names and numbers listed in it with contacts they had found recorded in Santos's cell phone. That investigation revealed several matches, and established a connection between the drug activities conducted at Apartment 1K and the $ 50,000 seized from Santos. (Compare Gov't Ex. 701 at 2 with Gov't Ex. 220 at 9-11.)
The Government further presented testimony that, at the time of his arrest and following his Miranda warnings, Sierra made numerous incriminating statements in which he described the items seized from Apartment 1K that he said belonged to him. Specifically, Sierra "claimed responsibility for everything that was found in the apartment." (Trial Tr. 143:11-13.) According to the Government's witnesses, Sierra described where the drug paraphernalia items were found, and how he would enter and use the apartment while his girlfriend, Sandra Reyes, was not there. (Id. 143:15-19; see also id. 144:5-16, 215:3-216:8, 251:18-252:6.)
Sierra also told the officers that he knew the $ 200,000 had come from the bedroom closet, and that the bags containing the heroin and drug preparation equipment had come from the dining room closet. (Id. 144, 215, 251-52.) Finally, Sierra admitted that he knew Santos as a friend of the family who ran errands for the family. (Id. 146.)
B. SENTENCING
In connection with Sierra's sentencing, the Probation Office prepared its initial Presentence Investigation Report ("PSR") dated March 13, 2013. The Probation Office determined that Sierra had three prior convictions for controlled substance offenses, and that each of them counted as predicates for the purpose of applying the career-offender provisions of the United States Sentencing Guidelines (the "Sentencing Guidelines"). All three offenses constituted violations of the New York Penal Law, and they derived from three separate arrests of Sierra on different dates with intervening time between the arrests. But, each conviction occurred by means of guilty pleas Sierra entered for each offense on the same day -- July 22, 1998. And, with respect to each conviction, he *192 was sentenced to indeterminate imprisonment of 28 months to 7 years. (See PSR ¶¶ 39-43.) On the basis of those prior convictions, the Probation Office determined that Sierra qualified as a career offender within the meaning of Section 4B1.1 of the Sentencing Guidelines. (See id. ¶¶ 28, 46.) Accordingly, the Probation Office calculated Sierra's sentencing range as 360 months to life imprisonment and recommended a custodial sentence of 360 months. (See id. at 18.)[3]
At sentencing on February 7, 2014, the Court adopted the position of the Government and the Probation Office that the career-offender provisions applied, and that the Sentencing Guidelines calculations set forth in the PSR were otherwise proper. The Court sentenced Sierra to a term of 360 months' imprisonment followed by 10 years of supervised release. (See Dkt. No. 113.)
C. POST-TRIAL MOTIONS
Upon review of the foregoing testimony and other documents and materials on the trial record, the Court ruled on Sierra's post-trial motions. It found that the Government had presented sufficient evidence from which a reasonable jury could render a verdict convicting Sierra on both counts beyond a reasonable doubt. Accordingly, the Court denied Sierra's post-trial motions. (See Dkt. No. 80.) The Court's view of the sufficiency of the evidence to sustain the jury's verdict was endorsed by the Second Circuit's affirmance of Sierra's judgment of conviction. (See Dkt. No. 124.)
II. DISCUSSION
The Court notes that Sierra is a pro se litigant. As such, the Court is obliged to hold his submissions to "less stringent standards than formal pleadings drafted by lawyers." Ferran v. Town of Nassau, 11 F.3d 21, 22 (2d Cir. 1993) (internal citation omitted).
A. SECTION 2255 AND THE SIXTH AMENDMENT RIGHT TO COUNSEL
A person in federal custody may move to vacate, set aside, or correct his sentence if (1) it was imposed in violation of "the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; or (3) "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). One basis for a Section 2255 claim is ineffective assistance of counsel, which is the ground upon which Sierra's Motion relies.
The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. See U.S. Const. amend. VI ; see also Kimmelman v. Morrison, 477 U.S. 365, 374-75, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) ; Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) ("Occasionally, the performance of defense counsel is so dismal that it ripens into the deprivation *193 of counsel altogether and potentially violates the defendant's Sixth Amendment rights."). However, criminal defendants asserting ineffective assistance of counsel must meet a high threshold "in order to deter a baseless attack on the performance of counsel in a last-ditch effort to avoid a conviction or reduce the sentence." Percan v. United States, 294 F.Supp.2d 505, 511 (S.D.N.Y. 2003) ; see also Kimmelman, 477 U.S. at 382, 106 S.Ct. 2574.
To prove ineffective assistance of counsel, the petitioner must satisfy a two-pronged test. First, he must show that "counsel's representation fell below an objective standard of reasonableness" according to "prevailing norms." Strickland v. Washington, 466 U.S. 668, 688-89, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Second, he must "affirmatively prove prejudice" by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 693-94, 104 S.Ct. 2052.
Counsel's performance is given a strong presumption of effectiveness, as courts recognize a "wide range of professional assistance." Id. at 689, 104 S.Ct. 2052 ; see also United States v. Yingst, 623 F. App'x 17, 20-21 (2d Cir. 2015) ("The standard for evaluating the adequacy of counsel's representation is 'a most deferential one,' since 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' ") (internal citations omitted). A petitioner cannot merely show that counsel made an error that had "some conceivable effect" on the result of trial, for "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Strickland, 466 U.S. at 693, 104 S.Ct. 2052. The errors in counsel's judgment must therefore be "so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." Regis v. United States, 665 F.Supp.2d 370, 371 (S.D.N.Y. 2009) (internal citations omitted); see also United States v. DiTommaso, 817 F.2d 201, 215 (2d Cir. 1987) ("[The] benchmark for judging any such claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.").
In evaluating whether counsel's errors prejudiced the outcome of the proceeding, courts must consider the totality of the evidence before the jury. Strickland, 466 U.S. at 693, 104 S.Ct. 2052. "[U]nlike the determination whether counsel's performance was deficient, [the prejudice inquiry] may be made with the benefit of hindsight." Morgan v. United States, No. 06-CV-1247, 2009 WL 1172849, at *5 (E.D.N.Y. May 1, 2009) (citing Lockhart v. Fretwell, 506 U.S. 364, 371-73, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) ); see also Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) ("[T]he determination whether the error 'prejudiced' the defendant ... will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial."). The standard of proof for the prejudice prong is less than a preponderance of the evidence. See Soto-Beltran v. United States, 946 F. Supp. 2d 312, 317 (S.D.N.Y. 2013). However, "some objective evidence other than defendant's assertions [is required] to establish prejudice." Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003).
A petitioner must satisfy both prongs to obtain relief, but the Supreme Court has stated that "there is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry *194 if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697, 104 S.Ct. 2052 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); see also Brown v. Artuz, 124 F.3d 73, 80 (2d Cir. 1997) (declining to address the first prong of Strickland on the ground that the defendant could not satisfy the prejudice prong); Rodriguez v. Portuondo, No. 01-CV-0547, 2006 WL 2168314, at *7 n.13 (S.D.N.Y. Aug. 1, 2006).
B. APPLICATION
Sierra was represented at trial by attorney David K. Bertran ("Bertran").[4] Sierra alleges that Bertran did not provide effective assistance of counsel because Bertran: (1) failed to move for suppression of certain post-arrest statements that Sierra made following his arrest, which Sierra contends was unlawful for lack of probable cause; (2) entered into a stipulation agreeing to the admission into evidence of a Government exhibit ("Exhibit 701"), which consisted of a report containing contact information that law enforcement agents had obtained from a search of a cell phone they seized from Santos; and (3) did not object to the determination by the Probation Office and the Court finding that, based on Sierra's prior criminal history, the career-offender provisions of the Sentencing Guidelines applied to his sentencing.
1. Counsel's Failure to File a Suppression Motion
Sierra argues that Bertran's legal representation was deficient because he did not file a motion to suppress the statements Sierra made after his arrest, which Sierra claims was unlawful because it was not sufficiently supported by the existence of probable cause. The Court rejects this argument.
The Sixth Amendment right to adequate representation of counsel does not obligate defense attorneys to file any and every motion that the defendant demands, or that particular facts may superficially support. See Klein v. United States, No. 09-CV-10048, 2012 WL 5177493, at *4 (S.D.N.Y. Oct. 17, 2012) ("[T]he Constitution does not require counsel to file every conceivable motion on behalf of her client. Indeed, counsel cannot be deemed ineffective for failing to make motions that are futile and/or lack any legally cognizable basis."). The law accords counsel reasonable latitude within which to make strategic choices regarding which motions the circumstances may sufficiently warrant, and it treats those professional calls with substantial deference. See Yingst, 623 F. App'x at 20-21. Counsel's tactical decision not to file a motion that on its face is meritless or futile cannot constitute grounds sustaining an ineffective assistance claim. See United States v. Arena, 180 F.3d 380, 396 (2d Cir 1999).
Here, the evidence supporting a finding of probable cause for Sierra's arrest on April 14, 2010 was overwhelming. Law enforcement agents had been conducting surveillance of the Building and Apartment 1K from early morning until Sierra's arrest in the mid-afternoon of April 14, 2010. The officers observed Sierra and his brothers repeatedly entering and exiting the Building while carrying a bag and engaging in a pattern of conduct that, based on their professional experience and common *195 sense, they could have reasonably interpreted as the offenders' counter-surveillance measures taken in anticipation of a drug transaction to check for the presence of law enforcement or to deflect suspicion. (Trial Tr. 39-52, 171-81, 197-202, 307-08.)
The officers' reasonable ground to believe that Sierra and his brothers were engaged in illegal activities was strengthened when they observed Santos exit the Building. Santos walked the same route the agents had seen Sierra and his brothers travel several times earlier on the same day. Santos also carried a small gift bag and denied it belonged to him, though the officers had observed Santos with the bag from the time he exited the Building until they found him in the restaurant to which he was trailed. When searched, the bag contained about $ 50,000 in cash. It was only upon Santos's arrest that the agents presumably made a reasonable circumstantial connection between Santos's presence in the Building, the gift bag containing a large amount of cash, and Sierra's earlier movements in the vicinity of the Building. Accordingly, they proceeded to arrest Sierra as he exited from Apartment 1K.
These circumstances, the Court finds, "would warrant a [law enforcement agent] of reasonable caution in the belief that contraband or evidence of a crime is present," thus providing sufficient probable cause to warrant Sierra's arrest. Florida v. Harris, 568 U.S. 237, 243, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013) (internal quotation marks omitted). At the very least, the evidence would support a law enforcement officer forming a reasonable suspicion of the occurrence of illegal conduct that would justify an arrest. See United States v. Brignoni-Ponce, 422 U.S. 873, 884, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (finding that reasonable suspicion exists where law enforcement agents are "aware of specific articulable facts, together with rational inferences from those facts").
Because evidence of the lawfulness of Sierra's arrest was so compelling, a motion challenging the arrest and seeking suppression of the statements Sierra made at the time, in all probability would have been found meritless and denied by the Court. The Court thus concludes that counsel's failure to file such a motion in this case manifested sound professional discretion and a supportable strategic choice that did not "f[a]ll below an objective standard of reasonableness" according to "[p]revailing norms." Strickland, 466 U.S. at 688-89, 104 S.Ct. 2052.
2. Failure to Object to the Cell Phone Report
At trial, the Government introduced and the Court admitted without objection Exhibit 701. That document contained a list of certain names and contact numbers that law enforcement agents had found in the cell phone they seized from Santos upon his arrest on April 14, 2010. Some of those names and numbers matched information contained in the drug ledger the officers seized from Apartment 1K following Sierra's arrest. Exhibit 701 was admitted into evidence as a Government exhibit through the testimony of the officer who prepared the document and testified about its contents.
Sierra contends that Bertran provided ineffective assistance by not objecting to the admissibility of Exhibit 701. This argument is meritless. In this instance, too, counsel's decision not to object to the introduction of particular evidence called for exercise of sound discretion and sufficient latitude to make reasonable strategic choices. Failure by counsel to challenge the presentation of evidence which, even if technically not admissible on one theory, would in all probability have come into *196 evidence in any event through a different procedural route, cannot support a claim of seriously deficient legal representation. See Brown, 124 F.3d at 77 (determining that "what objections should be raised" is a matter "primarily involv[ing] trial strategy and tactics").
Here, even if Bertran may have had reason to object to the admission of Exhibit 701 itself on hearsay grounds, such challenge would have been unavailing. The objection would not have affected the outcome because the Government properly laid the foundation for presenting the testimony of the witness who prepared it, and who described the substance of the document, even without formally needing to admit the exhibit itself. That procedural course was permissible as a recorded recollection under Federal Rule of Evidence 803(5) when introduced through the testimony of the agent who prepared the document.
Counsel's decision not to object to the admissibility of Exhibit 701 could thus constitute an exercise of sound discretion not to needlessly prolong the trial, and potentially antagonize the jury, by raising unnecessary technical objections. In this respect, the Court finds that counsel's judgment did not embody such a serious deficiency as to fall below an objective standard of reasonableness. Hence, counsel's performance did not deprive Sierra of the right to effective legal representation. Moreover, because the totality of the evidence of Sierra's guilt was so overwhelming, the Court is persuaded that Sierra cannot establish that but for counsel's alleged ineffective assistance "there is a reasonable probability that the outcome of the proceeding would have been different." Mayo v. Henderson, 13 F.3d 528, 534 (2d Cir. 1994). Consequently, Sierra's Motion cannot satisfy either prong of the Strickland test.
3. The Court's Career Offender Finding
Sierra argues that counsel was ineffective by not objecting to the three controlled substance predicate offenses that the PSR counted as qualifying prior convictions for the purpose of applying the career-offender provisions of the Sentencing Guidelines. See U.S.S.G. § 4B1.1. In essence, Sierra claims that because the three convictions at issue took place by guilty pleas he entered on the same day, and the court imposed the same sentence for each of them to run concurrently, the offenses constituted a single conviction, not three. On this point, Sierra misrepresents the facts and misstates the law.
The Sentencing Guidelines expressly provide that "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest." U.S.S.G. § 4A1.2(a)(2). An intervening arrest occurs when "the defendant is arrested for the first offense prior to committing the second offense." Id.
The record here is clear that Sierra was arrested for three separate drug-related offenses on three different days and charged by separate indictments: (1) on January 13, 1996 for criminal sale of a controlled substance on school grounds; (2) on January 18, 1996 for criminal possession of a controlled substance; and (3) on November 13, 1996 for criminal sale of a controlled substance. (See PSR ¶¶ 39-44.)
Thus, the determination of Sierra's career offender status made by the Probation Office in the PSR and adopted by the Court correctly applied the applicable Sentencing Guidelines. Counsel's objections to the application of those provisions would have been baseless as a matter of law. Failure by counsel to challenge the Court's findings was therefore not so objectively *197 unreasonable as to constitute grounds to support a claim of deficient assistance.
ORDER
For the reasons stated above, it is hereby
ORDERED that the motion of defendant Diogenes De Jesus Sierra ("Sierra") to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. Section 2255 (Dkt. No. 125) is DENIED .
Because Sierra has failed to demonstrate a denial of a constitutional right, a certificate of appealability will not issue.
SO ORDERED.

All citations to the record herein are to Docket Number 10-CR-416.

The Circuit Court remanded with instruction to the Court to correct an inadvertent error not material to this proceeding.

The Government points out that, in advance of sentencing, Sierra submitted yet another letter explaining his unwillingness to affirm his prior convictions. (See Dkt. No. 111.) There, Sierra claimed that his "pleas were not voluntarily and knowingly entered," and therefore "he cannot affirm any convictions." (Id. at 2.) In response, the Government argued that each of Sierra's prior state felony convictions for narcotics offenses was valid. (See Dkt. No. 112.) To support that position, the Government submitted Government Exhibit 901, which contained the parties' stipulation concerning Sierra's prior state convictions, as well as his plea allocution transcript. In addition, the Government attached certified copies of the state judgments of conviction regarding Sierra's prior felonies, which confirmed that Sierra had sold controlled substances on school grounds and had possessed cocaine. (See id. at Ex. C.)

Bertran had also served as co-counsel during Sierra's initial trial that resulted in a hung jury.